EL PUEBLO DE PUERTO RICO, apelado, *v.* EFRAÍN TORRES VILLA-FAÑE, acusado y apelante.

*Número:* CR-93-12        *Resuelto:* 5 de junio de 1997

*Martín González Vázquez*, abogado de la parte apelante; *Carlos Lugo Fiol, Procurador General, y Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Corrada Del Río.

Hoy nos corresponde resolver una apelación en un caso que sirve de escenario a uno de los problemas que más aqueja a la sociedad puertorriqueña, pero irónicamente uno de los menos reportados: el abuso sexual de menores.

Igualmente nos pronunciamos sobre la admisibilidad de prueba de referencia a base de excepciones a la regla que la excluye.

I

El 30 de marzo de 1992, el Ministerio Público presentó tres (3) acusaciones contra el apelante, Efraín Torres Villafañe, por el delito de violación técnica[1] y otras tres (3) acusaciones por el delito de actos lascivos e impúdicos.[2] A Torres Villafañe se le imputaba haber sostenido relaciones sexuales reiteradas con la joven W.C.C., menor de catorce (14) años de edad, en los años 1988, 1989 y 1990. En cuanto a las otras tres (3) denuncias, se le imputaba haber cometido actos lascivos e impúdicos contra la misma joven en los años 1988, 1991 y 1992. Torres Villafañe es el abuelastro de la perjudicada W.C.C., hecho que desconocía la

---

[1] Art. 99 del Código Penal, 33 L.P.R.A. sec. 4061.
[2] Art. 105 del Código Penal, 33 L.P.R.A. sec. 4067.

menor, quien creía que éste era su abuelo, hasta poco tiempo antes de presentarse esta acción.[3]

Luego de escuchada y evaluada la prueba, el tribunal encontró causa probable para arresto por el delito de violación técnica y por el delito de actos lascivos e impúdicos, alegadamente cometidos para el año de 1988. No encontró causa probable para arresto por los restantes cuatro (4) cargos. Inconforme con la decisión, el Ministerio Público acudió en alzada. En esta ocasión, se encontró causa probable para arresto por el delito de violación técnica alegadamente cometido durante los años 1989 y 1990. Sin embargo, no se encontró causa para arresto en las denuncias por el delito de actos lascivos e impúdicos alegadamente cometidos en los años 1991 y 1992.

Celebrada la correspondiente vista preliminar el 31 de agosto de 1992, el juez instructor determinó causa probable para acusar a Torres Villafañe por los delitos de violación técnica alegadamente cometidos en los años 1988, 1989 y 1990. No obstante, determinó que no existía causa probable para acusar por el delito de actos lascivos e impúdicos, alegadamente cometido en 1988. Esta determinación no fue recurrida por el Ministerio Público.

Aunque en los pliegos de acusación y antes de la fecha del juicio, el Ministerio Público anunció un total de diez (10) testigos de cargo, durante el juicio sólo declararon la menor W.C.C., su hermana menor, L.C.C., y el Dr. José Luis Padilla Carreras.

Luego de varias incidencias, el juicio en su fondo comenzó el 21 de abril de 1993 y los cargos se vieron en conjunto ante tribunal de derecho. Luego de concluido el juicio, Torres Villafañe fue encontrado culpable de los tres (3) cargos de violación técnica.

---

[3] El apelante era esposo de la Sra. Raquel Ruiz Mercado, abuela biológica de W.C.C., y padrastro de Wanda Colón Ruiz, madre de la perjudicada. T.E., págs. 37–38.

El 29 de junio de 1993, el tribunal dictó una sentencia mediante la cual le impuso al acusado una pena de reclusión de quince (15) años en cada uno (1) de los tres (3) cargos de violación técnica, para cumplirse de manera concurrente. Ordenó, a su vez, la encarcelación inmediata del acusado. De dicha determinación, el acusado presentó oportunamente un recurso de apelación ante este Tribunal, mediante el cual nos solicita la revocación de la sentencia dictada en su contra y, en la alternativa, nos solicita que le concedamos un nuevo juicio.

Específicamente, señala la comisión de los errores siguientes:

A. Erró el Tribunal Sentenciador como cuestión de Derecho al apreciar errónea y apasionadamente la prueba pues ésta no probó los delitos imputados más allá de duda razonable.

B. Erró el Tribunal Sentenciador al admitir en evidencia el testimonio de la testigo [L.C.C.] para probar la comisión de los delitos imputados mediante la alegada comisión de otros delitos en esa testigo, delitos por los cuales el acusado nunca fu[e] acusado y de los cuales se enteró el día del juicio.

C. Erró el tribunal sentenciador al admitir prueba de referencia para probar la culpabilidad del acusado a pesar de la oportuna objeción del acusado, bajo la premisa de estar disponibles los testigos para ser contrainterrogados, no habiendo sido después sentados estos testigos para ese propósito.

D. Erró el Tribunal Sentenciador al no conceder al acusado un juicio justo e imparcial, al interrumpir constantemente el desfile de la prueba para atender otros juicios y asuntos de otros casos, privando al acusado de su día en Corte y de que la prueba fuese cuidadosa y detenidamente evaluada, sin perjuicio ni apasionamiento.

E. Erró el Tribunal al permitir al señor Fiscal incurrir en conducta impropia al retrasar indebida e injustificadamente el juicio con el propósito de que dos testigos de coartada del acusado que no vivían en Puerto Rico, se vieran forzados en abandonar la jurisdicción, como lo hicieron, privando al juzgador de evaluar su testimonio en su inmediata presencia.

También al permitir al señor Fiscal presentar evidencia de otros alegados delitos cometidos por el señor acusado, *delitos por los cuales nunca fue acusado*, y nunca se mencionaron hasta el día del juicio, para probar la comisión de los delitos por

los cuales se juzgaba al acusado y alegar en Corte Abierta que había sido una estrategia del Pueblo para buscar la condena del señor acusado, como lo logró.

F. Incurrió en Error de Derecho el Tribunal Sentenciador al convertirse en juez-fiscal objetando prueba que el mismo Ministerio Público no objetaba y sugiriendo a éste objetar otras y asimismo interviniendo en el caso de tal manera que cesó en su función de juzgador imparcial para convertirse en parte.

G. Incurrió el tribunal sentenciador en error al condenar al acusado a sufrir una pena de quince (15) años en cada caso a pesar de existir un informe pre-sentencia favorable a éste con amplia prueba de atenuantes, demostrando así su prejuicio en contra de éste. Moción solicitando autorización para transcribir evidencia testifical e incidentes del juicio, págs. 2–3.

Presentados los correspondientes alegatos, los examinamos más a fondo.

## II

Como primer error, el apelante señala que el tribunal sentenciador, como cuestión de derecho, apreció errónea y apasionadamente la prueba, porque la evidencia presentada no probó los delitos imputados más allá de duda razonable.

A continuación, un resumen de la prueba según surge de la transcripción de evidencia.

La prueba de cargo descansó casi en su totalidad en el testimonio de la testigo principal, la menor perjudicada W.C.C. A tales efectos, la menor declaró que el primer incidente de abuso sexual ocurrió una tarde en la residencia del apelante, en Coto Laurel, Palmarejo, en el municipio de Ponce,(4) mientras la menor residía en dicha casa junto a su madre y su hermana, a raíz de la separación matrimonial de los padres de la perjudicada.(5)

---

(4) T.E., pág. 38.

(5) De la transcripción de la prueba se desprende que W.C.C. se mudó junto a su madre Wanda Colón y su hermana L.C.C. a la residencia del señor Torres Villafañe entre diciembre de 1987 y enero de 1988. T.E., pág. 103. Para la fecha en que W.C.C. se muda para casa de sus abuelos, éstos se encontraban residiendo Estados Unidos. T.E., pág. 56. Según su testimonio, el apelante y su abuela biológica regresaron a

La menor narró que la noche anterior, mientras veía televisión en la sala, el apelante llegó, vistiendo unos pantalones cortos, y se sentó en uno de los muebles de la sala. Continuó declarando que el apelante puso una de sus piernas sobre uno de los brazos del mueble, lo que provocó que la menor se percatara de que el apelante no tenía ropa interior bajo sus pantalones. La reacción de la menor fue virar su rostro inmediatamente hacia el otro lado de la sala.

Al día siguiente, mientras no había nadie en la casa, el apelante llamó a W.C.C. a su cuarto. Cuando la menor entró, notó que el apelante estaba semidesnudo de la cintura hacia abajo. El apelante, según declaró la perjudicada, comenzó a forzarla por una de sus manos, como para que lo tocara, mientras le preguntaba si eso que ella estaba observando, refiriéndose a sus genitales, era lo que ella había visto la noche anterior. Acto seguido, el apelante la empujó, en contra de su voluntad, sobre su cama y la violó por primera vez. Luego de lo sucedido, el apelante amenazó con llevársela y matarla si contaba lo ocurrido a alguien. T.E., págs. 41 y 51–53. Para entonces, W.C.C. cursaba el quinto grado de escuela elemental y contaba con sólo diez (10) años de edad.[6]

De acuerdo con la declaración de la menor, incidentes como el anterior continuaron ocurriendo cada vez que la perjudicada y el apelante se quedaban solos en la casa de este último.[7] Un tiempo después del primer incidente, la

___

Puerto Rico varios meses después de ella haberse mudado a la residencia de estos últimos. T.E., pág. 58.

[6] Del testimonio de la menor W.C.C. surge que el primer incidente de abuso sexual en su contra de parte del apelante ocurrió varios meses después de ésta haber cumplido diez (10) años, específicamente en 1988. T.E., págs. 287–288. A preguntas del Fiscal, y posteriormente del abogado de la defensa, la perjudicada declaró que el día de su nacimiento fue el 26 de enero de 1978. Véase T.E., págs. 34 y 104. Además, la menor aclaró que para la fecha del primer incidente se encontraba cursando el segundo semestre de quinto grado (T.E., págs. 54–55) y que hacía como tres (3) o cuatro (4) meses que sus abuelos habían llegado de Estados Unidos. T.E., pág. 58.

[7] Véase T.E., págs. 52–53, 61–64, 69–70 y 72–73.

abuela de W.C.C., que era quien siempre se encontraba en la casa, se enfermó de cáncer, por lo que pasaba gran parte del tiempo en el hospital sometiéndose a unos tratamientos de quimioterapia. Posteriormente, la abuela de W.C.C. falleció.[8] W.C.C. declaró que fue durante la enfermedad de su abuela que su abuelastro aprovechó para abusar sexualmente de ella con más frecuencia, pues durante el día rara vez se encontraba alguien en la casa de apelante. Añadió que, aun luego de ésta haberse mudado junto a su madre y sus dos (2) hermanas de la residencia del apelante, Torres Villafañe continuó abusando sexualmente de ella. T.E., págs. 68–73. Esto fue posible, según su declaración, porque la menor, a pesar de haberse mudado de la residencia de su abuelastro, continuó asistiendo a la misma escuela, por lo que la guagua escolar continuó dejándola en la casa de sus abuelos en espera de que su madre saliera del trabajo y la buscara. T.E., págs. 59–60. Más aún, la menor indicó que hubo ocasiones en las que se quedaba sola en su nueva residencia, porque su madre se encontraba cuidando a su abuela (la esposa del apelante) en el hospital, y su abuelastro se aparecía en su casa para abusar sexualmente de ella. T.E., págs. 68–73. Hasta que un día, desesperada por lo que le estaba sucediendo, decidió contarle a su amiga Nélika Arroyo Maldonado lo que su abuelastro le estaba haciendo. T.E., pág. 422.

No fue hasta 1992, cuando la menor se encontraba cursando el octavo grado, aproximadamente cuatro (4) años después de ocurrido el primer incidente, que Nélika decidió contarle a la madre de W.C.C. que algo le estaba sucediendo a su hija con su abuelastro. Ese mismo día, a preguntas de su madre, la menor decidió contarle todo lo ocurrido. Su madre, según el testimonio de la perjudicada, reaccionó sumamente nerviosa y manifestó que lo mismo había intentado el apelante contra ella.

---

[8] Según se desprende de la transcripción de la prueba, la abuela biológica de W.C.C. se enfermó a finales de 1989 y falleció el 6 de enero de 1991. T.E., págs. 65 y 108.

Inmediatamente, la madre de la perjudicada llamó a la tía de W.C.C., a la cual la menor también le contó todo lo sucedido, y luego decidieron llamar al Centro Sol Isolina Ferré en busca de ayuda. Al día siguiente se comunicaron con las autoridades y fue entonces cuando se hizo la querella en contra del apelante.[9]

Según el testimonio vertido por la menor, todas las ocasiones en las que su abuelastro abusó de ella, lo hizo a la fuerza, unas veces en la residencia del apelante y otras veces en la casa a la que posteriormente se mudaron la perjudicada, su madre y sus dos (2) hermanas pequeñas. Además, surge de su testimonio que todos los incidentes de abuso sexual en su contra ocurrieron durante el día, con excepción de los actos ocurridos la noche anterior al primer incidente.

Entre otras cosas, la perjudicada señaló que una de las veces que su abuelastro la obligó a tener relaciones sexuales con él, ella le preguntó porqué le hacía eso, a lo que éste respondió que tenía que cobrar todo lo que él le había dado a su mamá. T.E., pág. 97.

Como segundo testigo de cargo, el Fiscal presentó a la hermana de la perjudicada, L.C.C. Esta testigo narró cómo en una ocasión su abuelastro trató de obligarla a que tocara sus partes íntimas y la empujó sobre la cama para tener relaciones sexuales con ella. T.E., págs. 527 y 545. Según su testimonio, cuando ésta se negó a hacerlo, el apelante le cuestionó por qué ella no se dejaba si su hermana sí se dejaba. A pesar de las objeciones de la defensa en cuanto a la inadmisibilidad de esta parte del testimonio, el juez sentenciador admitió la evidencia en cuestión.

Como perito de cargo, el Ministerio Público presentó al Dr. José Luis Padilla Carreras, médico residente en el Hos-

---

[9] De la transcripción surge que la perjudicada prestó una declaración jurada el 19 de febrero de 1992. T.E., pág. 263. La menor contaba, entonces, con catorce (14) años y tres (3) semanas de nacida.

pital de Distrito de Ponce, del Departamento de Ginecología y Obstetricia, que fuera el que examinara a la perjudicada W.C.C. en el caso de abuso sexual. Del testimonio de dicho perito se desprende que la menor visitó la clínica el 5 de febrero de 1992 para realizarse un examen físico y que ella le dijo que había sido abusada sexualmente por su abuelastro. Añadió que la menor le informó que estos hechos le habían ocurrido desde corta edad hasta aproximadamente cinco (5) meses antes del día de la visita. T.E., págs. 579–580.

Del historial y examen físico que el doctor Padilla le realizó a la menor surgió, según el testimonio de dicho perito, que el hímen de la víctima tenía laceraciones viejas que no estaban activas, porque no tenían sangrado en ese momento, y que estos hallazgos eran compatibles con una persona que sí ha tenido relaciones sexuales, aunque no poco tiempo antes de la fecha del examen.

Con el testimonio de estos tres (3) testigos, el Ministerio Público dio por terminada la presentación de la prueba de cargo.

Por su parte, la defensa presentó su prueba, la cual estuvo constituida de los testimonios de doce (12) testigos, incluso el acusado, y la transcripción de la deposición de otros dos (2) testigos que no podían estar presentes en el juicio para ser interrogados. Tres (3) de los catorce (14) testigos fueron presentados como testigos de coartada, seis (6) como testigos de reputación y los restantes cinco (5) fueron presentados como testigos sustantivos.

Mediante el testimonio de los testigos de coartada, incluso a los dos (2) a los que se les tomó deposición videomagnetofónica, la defensa intentó probar que el apelante se encontraba residiendo en Estados Unidos, específicamente en el estado de Florida, para la fecha en que la perjudicada alegaba que ocurrió el primer incidente de abuso sexual. Por ende, era imposible que el apelante

hubiese abusado sexualmente de W.C.C. si se encontraba residiendo fuera de Puerto Rico.(¹⁰)

En cuanto a los casos de violación técnica presentados contra el apelante, ocurridos en 1989 y 1990, la defensa no presentó ningún tipo de prueba de coartada al respecto.

Para contrarrestar el testimonio de la perjudicada en cuanto a estos dos (2) cargos, la defensa presentó los testimonios de otros testigos con el propósito de probar que el apelante no tenía tiempo, durante la semana, de cometer los actos que se le imputaban. Según sus declaraciones, el apelante empezaba cada día de su semana a las 5:00 A.M. para atender desde temprano su cafetería ambulante, y regresaba de 2:30 a 3:00 P.M. para limpiar, junto a su esposa, la guagua que le servía de negocio. También aprovechaba para preparar la comida del próximo día. T.E., págs. 930 y 939.

Lo que la defensa trató de probar con la declaración de estos testigos fue que los actos alegados por la perjudicada no pudieron ser posibles, debido a que ésta, para las fechas en que ocurrieron los hechos, llegaba a casa del apelante de 5:00 a 5:30 P.M., y que para esa hora siempre había varias personas en la casa del apelante. T.E., págs. 930 y 939.

En cuanto a los testigos de reputación, éstos se limitaron a testificar que el apelante era una persona bien familiar y servicial, y que demostraba sentir un gran cariño por su esposa, la Sra. Raquel Ruiz. Por otro lado, como testigo sustantivo, la defensa sentó a declarar a una de las hijas de doble vínculo del apelante y la Sra. Raquel Ruiz, abuela biológica de W.C.C., la Sra. Evelyn Torres Ruiz. Del testimonio de esta testigo se desprende que mientras W.C.C. residía junto a su madre Wanda Colón Ruiz y su hermana

---

(¹⁰) De la transcripción surge que, de las deposiciones tomadas a los testigos de coartada que se tuvieron que ir, el juez estimó admisible, entre otras cosas, que el apelante y su esposa residieron en Estados Unidos por cinco (5) o seis (6) meses en 1988; que el apelante trabajaba en un hipódromo en dicho país, y que dichos testigos tienen constancia de dónde residieron durante esos meses. T.E., págs. 1112–1113.

L.C.C. en la casa del apelante, ella también residía en dicha casa en un pequeño apartamento ubicado en el área de la marquesina; entiéndase, para 1988. T.E., pág. 946. Dicha testigo señaló que sus padres regresaron de Estados Unidos a Puerto Rico en abril de 1988, como consecuencia de una llamada que ésta les hiciera porque se encontraba confrontando problemas con su hermana de vínculo sencillo, Wanda Colón Ruiz. Ésta indicó que su hermana Wanda, la madre de W.C.C., se la pasaba llevando hombres a la casa. T.E., pág. 949.

Por otro lado, la testigo adujo que mientras ella vivió junto a su hermana y sus sobrinas en casa del apelante, nunca escuchó ni notó nada extraño entre su padre y su sobrina W.C.C. T.E., pág. 953.

Para finalizar con su prueba, la defensa sentó al apelante para interrogarlo. El testimonio del acusado se caracterizó por reiterar la prueba presentada a través de los otros testigos de la defensa y por negar la prueba presentada a través de los testigos de cargo.

Con este último testigo, la defensa concluyó la presentación de su prueba, lo que dio paso al fallo del tribunal, mediante el cual se declaró culpable al aquí apelante de los delitos imputados.

De todo lo expresado anteriormente puede observarse que la prueba desfilada por el Ministerio Público, basada principalmente en el testimonio de la menor W.C.C., versa sobre todos los elementos requeridos por el Art. 99 de nuestro Código Penal, *supra*, y la jurisprudencia interpretativa para que se configure el delito de violación técnica. Según la jurisprudencia de este Tribunal, los dos (2) elementos más importantes que deben estar presentes para que se configure el delito de violación técnica son el acceso carnal con una mujer que no es la propia y que dicha mujer sea menor de catorce (14) años. *Pueblo v. Chévere Heredia*, 139 D.P.R. 1 (1995); *Pueblo v. Rivera Robles*, 121 D.P.R. 858 (1988).

Cualquier otro detalle, como el consentimiento de la menor, la manera en que ocurrió la relación sexual, si fue a la fuerza o no, o los sentimientos de la perjudicada hacia el agresor, "carecen de pertinencia para determinar la configuración de la conducta criminal". *Pueblo v. Chévere Heredia*, supra, pág. 15.

Luego de estudiar el testimonio extenso y detallado de la perjudicada sobre los hechos ocurridos en su contra, así como la totalidad de la prueba, concluimos que no hay razón alguna para intervenir con la apreciación de la prueba llevada a cabo por el tribunal sentenciador. A pesar de que la prueba de cargo estuvo basada casi en su totalidad en el testimonio de la perjudicada, el tribunal sentenciador entendió correctamente que era suficiente en derecho para sostener el fallo condenatorio.

Sobre este particular, la Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que un sólo testigo es suficiente para probar un hecho si el juzgador entiende que le merece entero crédito. *Pueblo v. Chévere Heredia*, supra; *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991); *Pérez v. Acevedo Quiñones*, 100 D.P.R. 894, 899 (1972).

En el caso de autos, al igual que en *Pueblo v. Rivera Robles*, supra, el testimonio de la menor W.C.C. se mantuvo fiel en cuanto al relato esencial de la experiencia sufrida. A pesar de que el apelante alega que del testimonio de la menor W.C.C. se desprenden ciertas contradicciones, no hay duda de que éste, según la prueba presentada y creída por el tribunal sentenciador, tuvo acceso carnal con la perjudicada, desde el año 1988, cuando la menor apenas tenía diez (10) años de edad, hasta pocos meses antes de que ésta cumpliera los catorce (14) años el 26 de enero de 1992. Por lo tanto, el juez de instancia le dio crédito al testimonio de la menor y entendió que era suficiente para probar más allá de duda razonable que el apelante era culpable de los hechos que se le imputaron.

Sabido es que el hecho de que un testigo incurra en ciertas contradicciones no impide que el tribunal sentenciador

le dé crédito a su testimonio, máxime cuando nada increíble, improbable e inverosímil se desprende de él. *Pueblo v. Rodríguez Román*, supra; *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 609 (1988); *Pueblo v. Arroyo Núñez*, 99 D.P.R. 842, 849 (1971); *Pueblo v. Vázquez López*, 98 D.P.R. 15, 17 (1969).

Específicamente, en *Pueblo v. Rivera Robles*, supra, pág. 865, señalamos, en cuanto al testimonio de una víctima de violación técnica, que:

> La existencia de algunas contradicciones, imprecisiones y exageraciones —al igual que su a veces aparente hostilidad hacia la representación legal del acusado ... y su silencio o negativa a responderle ciertas preguntas— no desmerecen su credibilidad. Al contrario, más que debilitar, refuerzan la sinceridad de su testimonio.

De hecho, explicamos que en casos de violación técnica, al estimar la credibilidad de la perjudicada, no podemos pasar por alto su edad, nivel de escolaridad, grado de estabilidad familiar y las posibles reacciones del trauma psicológico causado por el daño infligido durante el período en que la víctima fue abusada sexualmente. *Pueblo v. Rivera Robles*, supra.[11]

Al respecto, hemos sido claros al indicar que, en casos de esta naturaleza, la forma de hablar, el comportamiento, las explicaciones dadas, los gestos, ademanes y demás detalles perceptibles con los sentidos resultan esenciales para aquilatar adecuadamente la sinceridad y credibilidad de los testimonios. *Pueblo v. Chévere Heredia*, supra; *Pueblo v. Rivera Robles*, supra, pág. 869; *Ortiz v. Cruz Pabón*, 103 D.P.R. 939, 947 (1975). Como expresáramos en *Pueblo v. Chévere Heredia*, supra, pág. 16:

> De ordinario, el tribunal de instancia está en mejor posición que un tribunal apelativo para aquilatar la prueba testifical

---

[11] Véanse, además: *Pueblo v. Falcón Negrón*, 126 D.P.R. 75 (1990); *Pueblo v. Martínez Meléndez*, 123 D.P.R. 620, 623–624 (1989); *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287, 317 (1988).

porque pudo observar la manera como los testigos se expresaron y su comportamiento en la silla testifical (*demeanor*).

Es por todo lo expresado anteriormente que no podemos en apelación, con sólo un expediente frío e inexpresivo, sustituir la apreciación de la prueba llevada a cabo por el juez sentenciador. *Pueblo v. Rivera Robles*, supra, págs. 869–871.

Como dijéramos anteriormente, luego de dirimir la credibilidad de los testimonios aludidos y de aquilatar toda la prueba desfilada y admitida, el tribunal sentenciador determinó que el apelante era culpable de los cargos que se le imputaron. Por lo tanto, creído el testimonio de la perjudicada y ausente indicio alguno de error manifiesto, pasión, prejuicio o parcialidad, procede no intervenir con la apreciación de la prueba que hizo el tribunal de instancia.

### III

En cuanto al segundo error señalado, el apelante alega que el tribunal erró al admitir como evidencia el testimonio de la hermana de W.C.C., ya que éste se había presentado para probar la comisión de los delitos imputados mediante evidencia de que el apelante había cometido otros delitos contra la testigo. El apelante alega que nunca fue acusado por dichos delitos y que se enteró de ellos el día del testimonio.

De la declaración de la testigo L.C.C. en el juicio se desprende que en una ocasión el apelante, mientras se bañaba, le pidió a la testigo que le tocara sus partes íntimas, y que cuando ella rehusó hacerlo, el apelante le preguntó por qué ella no se dejaba si su hermana W.C.C. se dejaba. A estas expresiones, el apelante objetó y adujo que esa prueba era inflamatoria y que se traía para perjudicar al acusado. Añadió que dicha prueba no era pertinente, ya que no probaba la comisión de los delitos imputados al apelante. En respuesta a dicha objeción, el juez sentencia

dor señaló que la evidencia presentada era pertinente y que el apelante no ilustró al tribunal sobre una regla de exclusión que impidiera que dicho testimonio fuera admitido. Finalmente, el juez de instancia admitió la prueba.

Sobre la admisión de este testimonio, la parte apelante aduce en su alegato que dicha evidencia fue admitida en contravención a lo dispuesto en la Regla 20(B) de Evidencia, 32 L.P.R.A. Ap. IV, ya que constituye prueba del carácter del acusado, que fue presentada con el propósito de demostrar que el apelante había cometido los hechos que se le imputaban. Además, señala que de dicho testimonio se desprende una conducta delictiva por la cual nunca fue acusado y de la cual tuvo conocimiento el día de la declaración de la testigo en el juicio. Por su parte, el Procurador General alega que dicha prueba no se presentó para demostrar que el apelante actuó en conformidad con un carácter en particular, sino que se presentó con el propósito de probar el *motivo*. Este argumento del Procurador General no nos persuade.

En cuanto a la admisibilidad de la prueba de carácter de una persona, la Regla 20(A) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que evidencia del carácter de un acusado no es admisible cuando se ofrece para probar que en una ocasión específica la persona actuó en conformidad con tal carácter. Esta inadmisibilidad de la prueba de carácter está fundada en el escaso valor probatorio de ese tipo de evidencia junto a la probabilidad de efecto perjudicial indebido. E.L. Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1984, Cap. IV, pág. 68. El hecho de que una persona haya incurrido en conducta psicológica o moral negativa en una ocasión específica, no quiere decir que necesariamente tuvo que haber cometido los actos delictivos que se le imputan. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, República Dominicana, Ed. Corripio, 1994, Cap. VI, pág. 164. Es por esta razón que la prueba de carácter para probar con

ducta específica, no se excluye por falta de pertinencia, sino para evitar que el juzgador de los hechos le adscriba un peso mayor que el que merezca o le desvíe su atención de los elementos centrales del caso, o para evitar que se alargue innecesariamente el proceso. *Pueblo v. Martínez Solís*, 128 D.P.R. 135, 150 (1991).

En cuanto a la presentación de evidencia sobre la comisión de otros delitos, la Regla 20(B), *supra,* dispone que ese tipo de prueba no será admisible si se.utiliza para probar el carácter de una persona, con miras a demostrar que actuó, en un momento determinado, en conformidad con ese carácter. Esta disposición exige al proponente de la *prueba de otros delitos* que vincule esos otros actos con aspectos significativos de la conducta delictiva que ha de ser juzgada, como, por ejemplo, motivo, oportunidad, intención, preparación, plan, conocimiento, identidad o ausencia de error o accidente, para que dicha evidencia no sea excluida. Chiesa Aponte, *op. cit.,* pág. 68.

Al examinar el testimonio vertido por la hermana de W.C.C., no hay duda de su pertinencia, ya que la hermana tiende a corroborar el testimonio vertido por la perjudicada en cuanto a que por *admisión del propio apelante*, éste le expresó a la testigo haber tenido acceso carnal con la víctima.

Diferimos del apelante en cuanto a que el testimonio de L.C.C. fue erróneamente admitido por tratarse de prueba del carácter del acusado. Somos del criterio de que parte del testimonio objetado por la defensa sí era admisible a los fines de la Regla 62(A) de Evidencia, 32 L.P.R.A. Ap. IV, por tratarse de una admisión del acusado de que tenía acceso carnal con la perjudicada W.C.C.

La Regla 62(A) de Evidencia, *supra,* dispone que es admisible como excepción a la regla de prueba de referencia una declaración ofrecida en el juicio contra una parte, si la declaración fue hecha por dicha parte bien en su capacidad individual o en la representativa. *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992).

Las admisiones de parte son admisibles como evidencia a pesar de la regla de prueba de referencia. En estos casos, no se requiere garantía circunstancial de confiabilidad, porque siendo el declarante una parte en el pleito, no hay razón para excluir la declaración, ya que éste no puede quejarse de falta de confrontación consigo mismo. E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, Vol. III, pág. 467. Por lo tanto, como se trata de una declaración de una parte que está en el pleito —y que se usa en su contra— ésta tiene suficiente oportunidad para aclarar la declaración o impugnarla sin que se menoscaben sus derechos constitucionales. Emmanuelli Jiménez, *op. cit.*, pág. 390.

De hecho, de la transcripción de la prueba se desprende que la defensa interrogó al apelante cuando lo sentó como testigo, en cuanto a si había tenido algún tipo de relación sexual con W.C.C. y con su hermana L.C.C., a lo que éste respondió en la negativa. T.E., págs. 1218–1219. Más aún, cuando la defensa hizo alusión al testimonio de L.C.C., el acusado declaró que todo lo testificado por ella era una mentira. T.E., pág. 1219. El apelante en este caso tuvo oportunidad suficiente de defenderse de las alegaciones en su contra llevadas a cabo por la testigo L.C.C. durante su testimonio.

Siendo admisible como evidencia aquella parte del testimonio de L.C.C. sobre la admisión extrajudicial del acusado de que tuvo acceso carnal con la víctima, y habiéndose traído dicha prueba en contra del declarante que es parte en el pleito, no podemos más que concluir que la determinación de admisibilidad del juez sentenciador no fue del todo errónea.

Sin embargo, no podemos pasar por alto el hecho de que la parte del testimonio de L.C.C. sobre las proposiciones sexuales que le hiciera a ésta el apelante, es prueba de carácter del acusado. Además, por tratarse de actos delictivos del apelante, diferentes a los imputados en este caso

y por los cuales el apelante nunca ha sido acusado, el juez sentenciador no debió admitir en evidencia dicha prueba. No obstante, somos del criterio de que dicho error no es justificación suficiente para que procedamos a revocar la sentencia apelada. Veamos.

La Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, dispone que:

> No se dejará sin efecto una determinación de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:
> (1) La evidencia fue erróneamente admitida a pesar de la oportuna y *correcta* objeción de la parte perjudicada por la admisión, y
> (2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue *factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.* (Énfasis suplido.)

En cuanto al requisito de que la objeción sea "oportuna y correcta", este Tribunal ha señalado que:

> El propósito u objetivo que persigue la transcrita Regla 4 de Evidencia al exigir la "oportuna y correcta objeción" de la evidencia por la parte perjudicada por la introducción de la misma, no sólo resulta ser obvio sino que [sic] altamente beneficioso a una eficiente y sana administración de la justicia. *Dicho requisito, naturalmente, ayuda a evitar que los tribunales de instancia incurran innecesariamente en errores relativos a la admisión de evidencia al contar éstos, a tiempo, con una correcta exposición del derecho aplicable conforme el mejor criterio y conocimiento de los abogados de las partes.* Ello tiene el efecto no sólo de promover la celebración de procesos justos y la emisión de sentencias correctas en derecho sino que impide el mal gasto de tiempo y recursos económicos al ayudar a reducir a un mínimo la posibilidad de que las sentencias dictadas sean anuladas en revisión por los tribunales apelativos, lo cual tiene la consecuencia indeseable de tener que ordenarse la celebración de un nuevo proceso. Demostrado por la parte afectada, por la errónea admisión de evidencia a nivel de instancia, que efectivamente interpuso "oportuna y correcta objeción" a la misma, tendrá entonces el tribunal apelativo el deber de determinar si la admisión errónea de dicha evidencia "fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se

solicita". (Énfasis suplido.) *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 781–782 (1991).

Se desprende de la transcripción de la prueba del caso de autos que el abogado de defensa sí objetó oportunamente la admisibilidad del testimonio de la hermana de la perjudicada. Sin embargo, la objeción no fue por el fundamento correcto, según requiere la Regla 4 de Evidencia, *supra*, transcrita anteriormente.

El abogado de la defensa se limitó a objetar la admisibilidad de la prueba bajo los fundamentos de que se trataba de información inflamatoria, que ese testimonio no era pertinente y que se traía para perjudicar al acusado. En ningún momento surge de la transcripción de prueba que el abogado de la defensa hubiese objetado el testimonio de la testigo bajo el fundamento de que se trataba de prueba de carácter del acusado.

Sobre los fundamentos presentados por la defensa durante el juicio, el juez sentenciador señaló que la prueba sí era pertinente, que era cierto que el Fiscal la traía para inflamar y tratar de perjudicar al acusado, pero que por no haberlo ilustrado la defensa sobre una regla de exclusión que impidiera la admisión de la prueba, ésta era admisible.

Hemos expresado anteriormente que sólo cuando el fundamento de inadmisibilidad, es obvio o cuando la evidencia objetada es radicalmente inadmisible, es que se permite que la objeción sea de naturaleza general y no específica, como ocurre en los casos de prueba de referencia y de los privilegios. *Pueblo v. Franceschini Sáez*, 110 D.P.R. 794, 798 (1981). Cuando ese no es el caso, el magistrado puede exigir a la parte que objeta un mayor grado de especificidad en el fundamento de su objeción, so pena de entenderse renunciado el planteamiento.([12])

---

([12]) Ver E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, págs. 4–5. Véase, además, R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, República Dominicana, Ed. Corripio, 1994, pág. 50.

Si del contexto del caso no surge claramente cuál es el fundamento de la objeción, no procederá en apelación o revisión un señalamiento sobre admisión o exclusión errónea de prueba cuando no se invocó en instancia el fundamento correcto para la objeción. .

No hay duda de que, en el caso de autos, el abogado de la defensa objetó a tiempo, pero no bajo el fundamento correcto. Fue en el alegato presentado ante este Tribunal que por primera vez el abogado de la defensa planteó que el testimonio de la hermana de W.C.C. era inadmisible porque se trataba de prueba de carácter del acusado.

De todas maneras, aunque la defensa hubiese objetado bajo el fundamento correcto y de manera específica, la admisión errónea del testimonio no provoca la revocación de la sentencia apelada. Para que esto sea posible, el error cometido tiene que ser un factor decisivo o sustancial en el resultado del caso. *Pueblo v. Chévere Heredia,* supra; *Pueblo v. Rosaly Soto,* 128 D.P.R. 729, 744 (1991); *Pueblo v. Martínez Solís,* supra; *Pueblo v. Ruiz Bosch,* supra, págs. 781–782; *Pueblo v. Fradera Olmo,* 122 D.P.R. 67, 78 (1988).

En varias ocasiones hemos indicado que el criterio que debe utilizarse en casos de errores en la admisión de evidencia —independientemente de la posible existencia de otra prueba que demuestre la culpabilidad del acusado más allá de duda razonable— es si de no haberse admitido erróneamente la prueba en controversia probablemente el resultado hubiese sido distinto. *Pueblo v. Rosaly Soto,* supra; *Pueblo v. Mangual Hernández,* 111 D.P.R. 136, 145 (1981). Esto es, si dicha evidencia pudo haber tenido una influencia notable y determinante en el veredicto, fallo o sentencia que emitiera el juzgador de los hechos en el caso ante su consideración. *Pueblo v. Ruiz Bosch,* supra, pág. 786. Otros factores que han de considerarse son, entre otros: si el proceso fue celebrado ante Jurado o por tribunal de derecho; si el resto de la prueba presentada por el Ministerio Público fue de carácter circunstancial o si consistió

de evidencia directa, y si el error cometido fue uno ordinario o uno constitucional.

Como hemos visto, la prueba del Ministerio Público en el presente caso descansó primordialmente en el extenso y contundente testimonio de la perjudicada W.C.C. Los breves testimonios de los otros dos (2) testigos de cargo, más que abonar nueva prueba, ayudan a corroborar la declaración de la menor W.C.C., la cual es prueba directa en el caso. Por lo tanto, no podemos concluir que la admisión errónea del testimonio en cuestión fue un factor decisivo o sustancial en la sentencia cuya revocación se solicita.

Por otro lado, cabe destacar que todos los cargos contra el apelante se ventilaron ante un tribunal de derecho y no ante un Jurado, lo que hace menos probable que el juez sentenciador le adscriba a la prueba erróneamente admitida un peso mayor que el que merece, o que desvíe su atención de los elementos centrales del caso.

En conclusión, no procede la revocación de la sentencia apelada por los argumentos aducidos por el apelante en su alegato en cuanto al segundo señalamiento de error.

## IV

Como tercer señalamiento de error, el apelante plantea que el tribunal sentenciador erró al admitir prueba de referencia con el propósito de probar la culpabilidad del acusado, bajo la premisa de estar disponibles los testigos en cuestión para ser contrainterrogados, aun cuando no fueron sentados para ese propósito.

De la transcripción de la prueba surge que el tribunal sentenciador admitió como evidencia ciertas declaraciones de la perjudicada, como parte de su testimonio, en las que la menor hace alusión a una expresión hecha por su madre el día que le comunicó que había sido abusada sexualmente por su abuelastro. En su parte pertinente, la transcripción de la prueba lee como sigue:

... yo pues también tenía miedo decírselo a mami por miedo que ella creyera, pues, que no me creyera, entonces yo pues le dije mami si yo lo digo a ti, te va a dar algo, entonces se lo dije, le dije mira mami pues este, este Efraín pues abusó de mí; entonces pues ella, ella se puso bien nerviosa, me preguntó pero que cómo y yo pues, le dije, pues cuando tú, cuando tú tenías problemas con papi, cuando estaba, cuando ustedes no estaban en la casa y entonces pues ella, ella, ella me dijo pues que ella lo, ella ya, ella sabía que iba a suce ... que iba a pasar algo así y entonces pues yo fui ... me dijo que, que, que él había intentado lo mismo con ella .... T.E., págs. 87–88.

A esta parte de la declaración, el abogado de la defensa objetó oportunamente bajo el fundamento de que se trataba de prueba de referencia. El tribunal sostuvo que, a pesar de constituir prueba de referencia, las expresiones de la perjudicada eran admisibles al amparo de la Regla 63 de Evidencia, 32 L.P.R.A. Ap. IV, ya que la testigo había sido anunciada como testigo de cargo, se encontraba bajo las reglas del tribunal y podía ser contrainterrogada durante el juicio. Posteriormente, la defensa solicitó reconsideración al respecto y adujo que las declaraciones admitidas no eran admisibles bajo la Regla 63, *supra*, porque dicha regla requiere que el testigo no sólo esté disponible para ser contrainterrogado, sino que esté declarando en la silla testifical. Añadió que debe tratarse de expresiones hechas al testificar que sean contrarias a las dichas por éste en una declaración anterior. No obstante, el tribunal se reiteró en su posición y admitió la evidencia objetada.

La Regla 63 de Evidencia, *supra*,. dispone que:

[Será] admisible como excepción a la regla de prueba de referencia una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a la declaración anterior, siempre que dicha declaración fuere admisible de ser hecha por el declarante declarando como testigo.

Al interpretar esta regla, hemos explicado que una declaración anterior extrajudicial puede ser admitida y utilizada como prueba de la verdad de lo aseverado en ella *si el*

*testigo (declarante) presente en el juicio o vista hubiese testificado sobre la declaración anterior, y además estuviese sujeto a ser contrainterrogado en cuanto a ésta,* siempre y cuando dicha declaración fuese admisible de ser hecha por el declarante como testigo. *Pueblo v. Adorno Cabrera,* 133 D.P.R. 839, 859 (1993); *Pueblo v. De Jesús Ayuso,* 119 D.P.R. 21, 31–32 (1987); *Pueblo v. Esteves Rosado,* 110 D.P.R. 334, 337–339 (1980).

Un análisis detallado de la regla y sus salvaguardias nos permite establecer que la admisibilidad de la prueba de referencia bajo la Regla 63 de Evidencia, *supra,* es una de las instancias en las que menos se vulnera el derecho de confrontación. Esto se debe a que la regla exige que, para que sea admisible una declaración anterior de un testigo, éste esté ocupando la silla testifical y que la defensa haya tenido *la oportunidad de contrainterrogar. Pueblo v. Esteves Rosado,* supra, pág. 339. Esto es, que cuando el testigo (declarante) prestó la declaración, la defensa haya tenido oportunidad de contrainterrogar o que haya tenido la oportunidad de así hacerlo en el juicio, " 'ya que lo *crucial* en relación con el derecho a la confrontación es que la defensa *tenga la oportunidad de contrainterrogar".* (Énfasis en el original.) *Pueblo v. De Jesús Ayuso,* supra, pág. 32. Véase, además, *Pueblo v. Stevenson Colón,* 113 D.P.R. 634, 638–639 (1982).

En varias ocasiones, hemos señalado que para evitar infringir el derecho a la confrontación de una parte afectada por una declaración anterior es necesario que, antes de admitir la mencionada evidencia, dicha parte haya tenido la oportunidad de contrainterrogar *plena y efectivamente* al testigo (declarante). *Pueblo v. Adorno Cabrera,* supra; *Pueblo v. De Jesús Ayuso,* supra; *Pueblo v. Stevenson Colón,* supra. Esto implica que *el testigo esté sentado en la silla testifical, disponible para declarar y que efectivamente declare. Pueblo v. Hernández Osorio,* 112 D.P.R. 182, 197 (1982); *Pueblo v. Esteves Rosado,* supra. Sobre este

particular, este Tribunal fue claro al señalar, en *Pueblo v. Esteves Rosado,* supra, pág. 338, que "la Regla 63 *sólo aplica* cuando el declarante está ocupando la silla testifical, durante, o luego de haberse cubierto su testimonio directo y estando sujeto al contrainterrogatorio". (Énfasis suplido.) Véanse, además: *Pueblo v. Adorno Cabrera,* supra, pág. 849; *Pueblo v. De Jesús Ayuso,* supra, pág. 31.

En la actualidad, después de la decisión de este Tribunal en *Pueblo v. Esteves Rosado,* supra, es imprescindible, en cuanto a la admisibilidad de prueba de referencia bajo la Regla 63, *supra,* que el testigo esté sentado en la silla testifical, susceptible a ser contrainterrogado por la defensa, para que de esa manera tanto el juez como el Jurado tengan la oportunidad de observar cómo, bajo juramento, el testigo explica cualquier inconsistencia. "Y es, que cuando el testigo declara en el tribunal sobre el testimonio anterior, entonces surge la oportunidad adecuada para ser contrainterrogado". Véanse, además: *Pueblo v. Adorno Cabrera,* supra; *Pueblo v. De Jesús Ayuso,* supra, pág. 32; *Pueblo v. Hernández Osorio,* supra, pág. 197–199; *Pueblo v. Esteves Rosado,* supra, pág. 339.

Como bien señala el profesor Chiesa, el propósito de que la admisibilidad de prueba de referencia bajo la Regla 63, *supra,* requiera que el testigo (declarante) esté en la silla testifical susceptible a ser contrainterrogado, es desalentar el juicio por afidávit o declaraciones anteriores y estimular la presentación de testimonios en vivo en corte. Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.,* 1985, Cap. VIII, pág. 323.

A tales efectos, hemos expresado anteriormente que

> ... la naturaleza adversativa de nuestro sistema permite al juez o Jurado observar directamente las expresiones, el comportamiento y las reacciones del testigo. Como juzgadores, están en una posición ideal de adjudicar la verdad o falsedad de la declaración prestada anteriormente; determinar la verdad o falsedad del testimonio del propio testigo ofrecido en el tribunal a la luz de las inconsistencias en ambos, o determinar la false-

dad de ambas y no adjudicarle credibilidad a ninguna. *Pueblo v. Adorno Cabrera*, supra, pág. 860.

Según la norma jurisprudencial mencionada hasta el momento, no tenemos duda en cuanto a que el juez sentenciador, en el caso de autos, erró al admitir como evidencia las expresiones de la perjudicada sobre la declaración anterior de su madre, al amparo de la Regla 63, *supra*. Cuando la perjudicada testificó al respecto, aún la testigo (declarante) no había sido sentada en la silla testifical para ser interrogada y posteriormente contrainterrogada sobre la declaración anterior.

Si tomamos en consideración nuestra jurisprudencia interpretativa sobre la aplicabilidad de la Regla 63, *supra*, esta regla de exclusión aplica si al momento de admitir la declaración anterior el testigo (declarante) está en la silla testifical disponible para declarar al respecto, en espera de ser contrainterrogado. Este requisito tiene su génesis en el derecho constitucional a la confrontación, ya que éste garantiza que la parte adversamente afectada tendrá oportunidad real y efectiva de contrainterrogar al testigo (declarante). *Pueblo v. Adorno Cabrera*, supra. Véanse, además: *Pueblo v. De Jesús Ayuso*, supra; *Pueblo v. Hernández Osorio*, supra; *Pueblo v. Stevenson Colón*, supra; *Pueblo v. Esteves Rosado*, supra.

No obstante, la declaración anterior de la madre de W.C.C. sí era admisible como excepción a la prueba de referencia, pero al amparo de la Regla 65(B) de Evidencia, 32 L.P.R.A. Ap. IV.([13])

El fundamento de garantía circunstancial de veracidad para esta excepción a la regla de prueba de referencia es

---

([13]) La Regla 65(B) de Evidencia, 32 L.P.R.A. Ap. IV, lee como sigue:

"Es admisible como excepción a la regla de prueba de referencia aunque el declarante esté disponible como testigo:

.  .  .  .  .  .  .  .

"(B) *Declaraciones espontáneas por excitación*: Una declaración hecha mientras el declarante estaba bajo la influencia de excitación causada por la percepción de un acto, evento o condición y la declaración se refiere a dicho acto, evento o condición."

que el acto que se percibe y sobre el cual versa la declaración es tan impactante, intimidante o alarmante que impide la facultad de reflexionar en tal forma que se le hace difícil al testigo la fabricación de la declaración.[14] A diferencia de la Regla 63, *supra*, y la Regla 64 de Evidencia, 32 L.P.R.A. Ap. IV, la Regla 65 (32 L.P.R.A. Ap. IV) no está condicionada a la disponibilidad o no disponibilidad del declarante para comparecer como testigo. Esto se debe a que las garantías circunstanciales de confiabilidad en esta regla son tan fuertes que se prescinde de cualquiera de estos dos (2) requisitos. Véase Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.*, 1985, Cap. VIII, pág. 373. Por lo tanto, puede ser otro testigo que escuchó esa declaración quien declare al respecto, tal y como ocurrió en el caso de autos. "Por supuesto, la parte contra la cual se ofrece evidencia bajo esta regla puede siempre traer al declarante como testigo si éste está disponible." Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.*, 1985, Cap. VIII, pág. 373.

En conclusión, para que una declaración que constituye prueba de referencia sea admisible bajo la Regla 65(B), *supra*, es necesario que estén presentes los requisitos siguientes: (1) que se trate de un evento lo suficientemente alarmante que produzca una manifestación espontánea e irreflexiva; (2) falta de tiempo para inventar la manifestación, y (3) que la manifestación se refiera al evento que la causa. *Nieves López v. Rexach Bonet*, 124 D.P.R. 427, 435 (1989); *Pueblo v. García Reyes*, 113 D.P.R. 843, 850 (1983); *Pueblo v. Cortés del Castillo*, 86 D.P.R. 220, 229 (1962).

En el caso de autos, la confesión que le hace la menor W.C.C. a su madre, en cuanto a que había sido abusada sexualmente por su abuelastro, es un evento lo suficientemente impactante o alarmante como para ser susceptible de provocar gran excitación en ella. También es de esperarse que, producto de ese tipo de confesión, una madre

---

[14] Emmanuelli Jiménez, *op. cit.*, pág. 427.

haga declaraciones espontáneas que gocen de la confiabilidad suficiente para ser admitidas como excepción a la regla de la prueba de referencia.

En cuanto al requisito de contemporaneidad entre el evento y la declaración, en el inciso (B) de la Regla 65, *supra*, a diferencia de los otros incisos que constituyen ésta, la declaración no tiene que ser producto inmediato de ese acto, suceso o evento impactante o alarmante. Lo importante es que la persona, al momento de declarar, esté bajo la influencia de la excitación que le produjo dicho acto, suceso o evento. *Pueblo v. Muñoz*, 68 D.P.R. 171 (1948); *Pueblo v. Blanco*, 40 D.P.R. 130 (1929). Véanse, además: Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit.*, pág. 381; Emmanuelli Jiménez, *op. cit.*, pág. 428.

Como elemento adicional a favor de la confiabilidad de la declaración anterior de la madre de W.C.C., la declarante hizo la expresión en cuestión de manera espontánea e inmediatamente después de que su hija le manifestara lo que le estaba sucediendo. T.E., págs. 87–88.

Por todo lo antes expuesto, la declaración de la madre de la perjudicada cumplía con todos los requisitos para ser admisible como evidencia como excepción a la regla de prueba de referencia al amparo la Regla 65 de Evidencia, *supra*.

Los hechos de este caso requieren, por otra parte, que hagamos una aclaración en cuanto a la relación existente entre el derecho de confrontación y la Regla 63, *supra*. Veamos.

En el caso de autos, la declaración anterior en controversia no surge en el juicio mediante el testimonio de la testigo (declarante), sino mediante la declaración de la testigo principal, la víctima de los hechos o perjudicada. El tribunal decide admitir la declaración de la perjudicada al respecto, al amparo de la Regla 63, *supra*, a pesar de que la testigo (declarante) no se encontraba sentada declarando.

El juez de instancia adujo que por encontrarse la testigo (declarante) en corte y bajo las reglas del tribunal, ésta podía ser contrainterrogada posteriormente por la defensa en cuanto a la declaración admitida.

Por entenderlo innecesario, el Ministerio Público decidió no sentar a la testigo (declarante) en el estrado, pero, al finalizar con su prueba, la ofreció al abogado de la defensa para que, si le interesaba, la interrogara. La defensa, por su parte, decidió no utilizar ninguno de los testigos ofrecidos por el Fiscal, por lo que procedió a presentar su prueba. T.E., pág. 621. A pesar de su renuncia a interrogar los testigos ofrecidos, entre ellos la madre de la perjudicada, el apelante adujo en su alegato que como *nunca* el testigo (declarante) fue sentado a declarar, no tuvo oportunidad de contrainterrogarlo sobre la declaración admitida, lo que a su entender violó su derecho a la confrontación.[15]

Diferimos del apelante en cuanto a su alegación de que se infringió el derecho a la confrontación del acusado, porque alegadamente no se le dio oportunidad de contrainterrogar a la testigo (declarante).

A pesar de que el derecho a la confrontación y esta regla de exclusión de prueba de referencia tienen un mismo fin, estos no son equivalentes. El hecho de que la declaración anterior haya sido admitida erróneamente bajo Regla 63, *supra*, no quiere decir que necesariamente la parte afectada por la declaración anterior no haya tenido oportunidad de contrainterrogar y que el derecho de confrontación del acusado se haya visto infringido a consecuencia de dicho error.

Usualmente, la admisión errónea de prueba de referencia acarrea el menoscabo del derecho a la confrontación de

---

[15] El Art. II, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, garantiza al acusado en un proceso criminal su derecho a carearse con los testigos de cargo. Este derecho se satisface, en cuanto a la admisibilidad de declaraciones anteriores de un testigo, si al momento de prestar la declaración hubo oportunidad de contrainterrogar al testigo o si se le brinda la oportunidad a la defensa de así hacerlo durante el juicio. *Pueblo v. De Jesús Ayuso*, 119 D.P.R. 21 (1987).

la parte afectada por dicha admisión, principalmente si se trata de un acusado. *Pueblo v. Esteves Rosado*, supra, pág. 339. Sin embargo, esa no es la situación en este caso. Nos explicamos.

A pesar de que el Art. II, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, garantiza que en todo proceso criminal, el acusado disfrutará del derecho a carearse con todos los testigos de cargo, esto no quiere decir que dicho derecho es absoluto. La parte con derecho a contrainterrogar puede renunciar a su derecho a confrontarse con los testigos de la parte contraria. *Pueblo v. Stevenson Colón*, supra, pág. 639. Al respecto, la Regla 40 de Evidencia, 32 L.P.R.A. Ap. IV, claramente dispone que:

> Un testigo podrá testificar únicamente en presencia de todas las partes involucradas en la acción y estará sujeto a ser interrogado por todas ellas, *si éstas optan por asistir a la vista y por interrogar al testigo.* (Énfasis suplido.)

Por lo tanto, en un procedimiento criminal se le tiene que garantizar al acusado la oportunidad de contrainterrogar a los testigos de cargo, pero si éste opta por no hacerlo, renuncia a su derecho de confrontación en los casos que así lo decida. Como dijéramos anteriormente, lo crucial en relación con el derecho a la confrontación es que la defensa *haya tenido la oportunidad de contrainterrogar* cuando se hizo la declaración anterior o durante el juicio; no si efectivamente se contrainterrogó. *Pueblo v. Torres García*, 137 D.P.R. 56 (1994); *Pueblo v. De Jesús Ayuso*, supra, pág. 32; *Pueblo v. Stevenson Colón*, supra, pág. 639; *Pueblo v. Lebrón González*, 113 D.P.R. 81, 97 (1982); *Pueblo v. Hernández Osorio*, supra, pág. 196; *Pueblo v. Ruiz Lebrón*, 111 D.P.R. 435, 442–443 (1981).

Se desprende de los hechos de este caso que, luego de presentada toda la prueba de cargo, el abogado de la defensa expresó no tener interés en utilizar ninguno de los testigos ofrecidos por el Ministerio Público, entre ellos, a la

madre de la perjudicada.([16]) Los testigos de cargo habían sido dejados bajo las reglas del tribunal a solicitud del abogado de la defensa con el propósito de utilizarlos posteriormente, de entenderlo necesario. T.E., pág. 624. Por lo tanto, la defensa, contrario a lo que alega en su alegato, sí tuvo oportunidad de contrainterrogar a la testigo sobre su declaración anterior, vertida por la perjudicada, cuando el Ministerio Público puso a dicha testigo a la disposición de la defensa. Sin embargo, la defensa prefirió no hacerlo, renunciando voluntariamente a su derecho a carearse con la testigo (declarante).

La *oportunidad de contrainterrogar* que requiere el derecho a la confrontación no sólo es posible cuando un testigo está sentado en la silla testifical, luego de haber sido interrogado y en espera de ser contrainterrogado. La *oportunidad de contrainterrogar* a un testigo (declarante) también es viable cuando dicho testigo, a pesar de no haber sido sentado a declarar, es ofrecido por el Fiscal a la parte adversamente afectada por una declaración suya extrajudicial que ha sido admitida en evidencia mediante el testimonio de otro de los testigos.

Es conocida la regla de que una parte que llame a un testigo identificado con la parte adversa puede llevar a cabo su interrogatorio mediante preguntas sugestivas, como si se tratara de un contrainterrogatorio. Ver Regla 43(H) de Evidencia, 32 L.P.R.A. Ap. IV. Es obvio entonces que la defensa, en el caso de autos, pudo haber contrainterrogado a la testigo (declarante) sobre la declaración anterior, si hubiese optado por llamarla a testificar, cuando el Ministerio Público la ofreció junto a los otros testigos de cargo.

---

([16]) De la transcripción de la prueba se desprende lo siguiente:

"LIC. GONZALEZ: A si [sic], Vuestro Honor, perdoneme [sic] y queriamos [sic] indicarle también ante [sic] que se nos olvide de que eh, de que los testigos que nos puso a disposición el compañero nosotros no l[o] vamos a utilizar.

"JUEZ: A ninguno?

"LIC. GONZALEZ: A ninguno." T.E., pág. 621.

Por las razones antes señaladas, sería equivocado concluir que, en este caso, la defensa no tuvo oportunidad real y efectiva de contrainterrogar a la testigo (declarante), a pesar de que la declaración anterior fue erróneamente admitida bajo la aludida Regla 63.

Es evidente, además, que la prueba de cargo presentada, independientemente de la declaración anterior de la madre de la perjudicada, era lo suficientemente sólida y contundente como para demostrar la culpabilidad del acusado más allá de duda razonable.

Por otro lado, debe tomarse en consideración que, en cuanto a la admisión en evidencia de prueba de referencia, es necesario establecer una distinción entre los casos por jurado y los casos por derecho propio. Como bien señala el profesor Chiesa:

> Debe tenerse en cuenta que las reglas de exclusión, especialmente la regla de prueba de referencia, están fundamentalmente pensadas para casos ante jurado .... Por eso en casos civiles y en casos criminales por tribunal de derecho debe existir más flexibilidad para recibir en evidencia prueba de referencia. Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.*, 1985, Cap. VIII, pág. 360.

A diferencia de los miembros de un Jurado, un juez es un técnico del Derecho. Los jueces, en particular los de instancia, tienen mucha experiencia, están calificados y entrenados para evaluar la prueba que se les presente. Tienen, por ende, la capacidad de admitir la prueba, en cuanto a un aspecto, y descartarla en cuanto a otro. *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983). Por lo tanto, no hay duda de que el error aquí cometido no justifica por sí solo la revocación del dictamen del tribunal de instancia, máxime cuando la declaración en cuestión era admisible bajo la Regla 65(B), *supra*, y la declarante pudo ser interrogada por la defensa, según indicáramos anteriormente.

# V

En cuanto a los señalamientos de error cuarto y quinto, por considerar que están íntimamente relacionados, procedemos a discutirlos en conjunto.

El apelante adujo en su escrito que el tribunal sentenciador erró al no conceder un juicio justo e imparcial al acusado. Éste alega que el juez interrumpió en varias ocasiones el desfile de la prueba para atender otros juicios y asuntos de otros casos, lo que privó al acusado de su día en corte e impidió que la prueba fuese cuidadosa y detenidamente evaluada. Además, sostiene que le permitió al Ministerio Público incurrir en conducta impropia al permitirle retrasar indebida e injustificadamente el juicio de manera que los testigos de coartada no pudieran testificar en corte.

La Constitución de Puerto Rico reconoce, en su Art. II, Sec. 11, *supra*, que en todo proceso criminal, un acusado disfrutará del derecho a un juicio rápido, justo e imparcial.

En cuanto al derecho de un acusado a ser procesado en un juicio rápido y sin interrupciones, las Reglas de Procedimiento Criminal no prescriben expresamente un período fijo o uniforme para que se dilucide en sus méritos una causa criminal. Dicho término no es determinable a ciencia cierta, porque la dinámica de cada caso es singular y única. El tiempo que tome cada caso va a depender de la naturaleza de los cargos, el número de testigos que testifiquen y la cantidad y el carácter de la prueba documental o tangible presentada. Todo esto sin mencionar los posibles sucesos impredecibles que pueden acaecer y las suspensiones o recesos justificados que las circunstancias de cada caso puedan requerir. *Pueblo v. Rivera Tirado*, 117 D.P.R. 419, 434 (1986). Por lo tanto, la duración de un juicio en su fondo va a variar de caso a caso. No obstante, una buena recepción de la evidencia por parte del juzgador —en par-

ticular la prueba oral— es esencial para una correcta y acertada determinación judicial. Por eso es razonable que el trámite procesal se caracterice por una unidad y que la vista en su fondo discurra sin interrupciones. Íd.

Como primer planteamiento, el apelante aduce que las constantes interrupciones del desfile de la prueba, para que el juez atendiera otros juicios o asuntos de otros casos, evitaron que el acusado tuviera un juicio justo e imparcial, ya que el juez no pudo evaluar cuidadosa y detenidamente la prueba desfilada. En cuanto a este primer argumento, el apelante no tiene la razón.

El juicio en su fondo comenzó el 21 de abril de 1993 y finalizó el 29 de junio de 1993. En otras palabras, transcurrieron dos (2) meses y ocho (8) días desde que se inició el juicio hasta que el tribunal dictó sentencia en el caso.

Por otro lado, el Ministerio Público sólo sentó a declarar a tres (3) testigos de cargo, dos (2) de los cuales fueron extensamente contrainterrogados por la defensa —en particular, la perjudicada— mientras que la defensa sentó a doce (12) testigos, incluso el acusado, con exclusión de dos (2) de los testigos de coartada a los que se les tomó una deposición, porque no pudieron estar presentes en el juicio.[16]

Un estudio detallado de la transcripción de la prueba nos permite concluir que, a pesar de las interrupciones que pudo haber sufrido el desfile de la prueba, la defensa no sólo tuvo oportunidad de contrainterrogar a cabalidad a cada uno de los testigos de cargo, sino que el juez sentenciador le permitió interrogar detenidamente a cada uno de sus doce (12) testigos. T.E., págs. 625–1231. El hecho de que el juez tuviera ante su consideración otros casos a la misma vez que éste, no quiere decir que no haya sido cuidadoso al evaluar la prueba presentada por ambas partes. Máxime cuando el juez estuvo más tiempo expuesto, por su

---

[16] Ver T.E., págs. 100–445.

duración, a la prueba de la defensa que a la prueba de cargo.

Este Tribunal ha sido enfático al señalar que rechaza la solución automática de que toda demora o interrupción en la recepción de la prueba o el mero transcurso del tiempo en la solución de un caso anula, por sí solo, el proceso o dictamen judicial. *Pueblo v. Rivera Tirado*, supra, pág. 440; *Pueblo v. Ramos Álvarez*, 118 D.P.R. 782, 790–791 (1987).

Por otro lado, nos reiteramos en nuestro señalamiento de que este juicio se dilucidó por tribunal de derecho, lo que aminora el peligro de confusión y desorientación en caso de interrupciones durante el desfile de la prueba. Un juez, a diferencia de los miembros de un Jurado, puede tomar notas y recurrir a ellas cuando lo entienda necesario.

> Además, su entrenamiento y experiencia lo sitúan en mejor posición que el jurado para adoptar las medidas de rigor dirigidas a que las suspensiones y recesos afecten lo menos posible los intereses del acusado. *Pueblo v. Rivera Tirado*, supra, pág. 440.

A pesar de que lo ideal en estos casos es que el proceso de recepción de la evidencia sea ininterrumpido, el hecho de que el desfile de la prueba sufra ciertas interrupciones, no quiere decir que ineludiblemente la capacidad de los jueces para aquilatar y evaluar la prueba justa y correctamente se va a ver afectada. Más aún, cuando se trata de jueces de instancia que están más que acostumbrados a los itinerarios cargados.

Tampoco estamos de acuerdo con la alegación del apelante de que el tribunal le permitió al Fiscal que, mediante conducta impropia, retrasara indebida e injustificadamente el juicio con el propósito de que dos (2) de los testigos de coartada tuvieran que abandonar la jurisdicción y no pudieran testificar en presencia del juzgador. No le asiste la razón.

Primeramente, lo que surge de la transcripción de la vista de 23 de abril de 1993, a diferencia de lo que alega el

apelante en su escrito, es una solicitud al juez, de parte de la defensa, de que se les tomara una deposición a ambos testigos de coartada, mediante cinta videomagnetofónica, para perpetuar su testimonio en caso de tenerlo que utilizar en cualquier momento. T.E., pág. 365. Luego, a insistencia del juez sentenciador, la defensa decidió pedir que se alterara la presentación de la prueba después que contrainterrogara a la perjudicada. Posteriormente, el juez, a petición del Fiscal, decidió que la presentación de la prueba sería alterada luego de que otra de las testigos de cargo testificara. La defensa estuvo de acuerdo con esta determinación del tribunal, a pesar de que tenía conocimiento de que uno de los testigos de coartada tenía pasaje para marcharse el día siguiente a la fecha en que se hizo la petición; entiéndase, el sábado, 24 de abril de 1993. T.E., págs. 362 y 373–375. Era previsible que a sólo dos (2) días de haber comenzado el juicio, tanto el interrogatorio como el contrainterrogatorio de la perjudicada iban a tomar más de un día en finalizar, por lo que la defensa no iba a poder interrogar a su testigo, en presencia del juez, posteriormente.([17]) Contrario a lo que aduce la defensa, la alteración de la presentación de la prueba no pudo llevarse a cabo porque la defensa prefirió tomarle una deposición a los dos (2) testigos, no porque el Fiscal se opuso. De hecho, la única solicitud formal que se desprende de la transcripción de la prueba es la de toma de deposición y no la de alteración de la presentación de la prueba. T.E., pág. 365.

Por todo lo antes expuesto, no podemos imputar al Ministerio Público que su conducta haya impedido que los dos testigos de coartada pudieran testificar en presencia del juez. Aún siendo cierto que la conducta del Fiscal evitó que

---

([17]) Según surge de la transcripción de la prueba, cuando la perito que iba a testificar después de la perjudicada fue descalificada, la defensa permitió que el Ministerio Público continuara con su prueba y no solicitó al juez que se cumpliera con su dictamen de alterar la prueba para interrogar a los testigos de coartada que se tenían que marchar. T.E., págs. 520–523.

el juicio comenzara cinco (5) días antes de lo previsto —y que, por ende, los testigos en cuestión pudieran testificar en presencia del juez— la parte apelante no presenta planteamientos específicos que nos convenzan de que el testimonio en vivo de esos testigos pudo haber sido determinante y significativo en el dictamen del tribunal de instancia. T.E., págs. 1112–1113.

En cuanto al derecho que tiene un acusado a un juicio justo e imparcial, la parte que así lo alega tiene que probar que la culpabilidad del acusado no se fundamentó en la prueba y en los argumentos aducidos ante el tribunal; que no tuvo oportunidad de confrontarse con la prueba en su contra; que no se demostró más allá de duda razonable su culpabilidad mediante prueba admisible, conforme a las normas de relevancia, confiabilidad y certeza prevalecientes. *Pueblo v. Torres Rivera*, 129 D.P.R. 331, 343 (1991); *Pueblo v. Ríos Álvarez*, 112 D.P.R. 92, 98 (1982).

Específicamente, el derecho a un juicio justo e imparcial es sólo el derecho a un juicio en el que se respete el debido proceso de ley y la gama de derechos que cobijan al acusado durante un proceso criminal. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit.*, 1992, Vol. II, Cap. 10, Sec. 10.6, págs. 80–81.

Se viola el derecho a un juicio justo e imparcial cuando se comenta indebidamente el silencio del acusado;[18] cuando se admite una confesión involuntaria del acusado;[19] cuando se viola el derecho a la confrontación;[20] cuando se viola el derecho a la comparecencia compulsoria de testigos;[21] el derecho a asistencia de abogado;[22] publi-

---

[18] *Pueblo v. Esquilín París*, 96 D.P.R. 415 (1968); *Pueblo v. Perales Figueroa*, 92 D.P.R. 724 (1965).

[19] *Pueblo v. López Rodríguez*, 118 D.P.R. 515 (1987).

[20] *Pueblo v. De Jesús Ayuso*, supra.

[21] *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985); *Pueblo v. Burgos*, 113 D.P.R. 834 (1983).

[22] *Pueblo v. Ortiz Couvertier*, 132 D.P.R. 883 (1993).

cidad excesiva;[23] cuando se acusa como reincidente y se admite la convicción anterior,[24] entre otros.

Bajo esta óptica, el examen integral de la prueba desfilada ante el juez sentenciador y los planteamientos señalados por la defensa en este caso, no nos convencen de que al acusado no se le haya concedido un juicio justo e imparcial. Por lo tanto, los errores antes apuntados no se cometieron.

Coincidimos con los señalamientos del profesor Chiesa en cuanto a que:

> Cuando se dice que el acusado tiene derecho a un juicio justo e imparcial, pero no a un juicio perfecto, lo que se quiere expresar es que hay muchos errores que no alcanzan el grado de dejar sin efecto el resultado del juicio, aun cuando se haya menoscabado en alguna medida algún derecho constitucional de un acusado. Por otra parte, pertenece a la esencia de la justicia humana la imperfección judicial, por lo que sería iluso pretender un juicio criminal sin errores procesables. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos, op. cit.*, Vol. II, pág. 81.[25]

## VI

Otro de los señalamientos de error apuntados por el apelante es que el juez sentenciador incurrió en error de derecho al convertirse en juez-fiscal, al intervenir en el caso de manera tal que cesó en su función de juzgador imparcial para convertirse en parte.

En síntesis, el apelante aduce que el juez se convirtió en parte del Ministerio Público al objetar la prueba que el Fiscal no objetaba y al intervenir en el caso constantemente, en particular cuando la defensa contrainterrogó y cuando presentó su prueba.

---

[23] *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10 (1976).

[24] *Pueblo v. Galindo González*, 129 D.P.R. 627 (1991).

[25] Véanse, además: *Pueblo v. López Rodríguez*, supra; *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991).

Una lectura detallada de la transcripción de la prueba nos lleva a concluir que al apelante no le asiste la razón. Dicha transcripción, a diferencia de lo que alude el apelante, es prueba fidedigna de que el juez de instancia fue imparcial y justo con ambas partes en sus determinaciones e intervenciones durante el juicio. De hecho, el propio abogado de la defensa aceptó que el juez había actuado equitativamente con ambas partes durante el proceso.[26] Nos parece del todo infundada esta alegación del apelante, máxime cuando el juez de instancia fue bien condescendiente con dicha parte ante muchas de sus peticiones. Por ejemplo, el juez de instancia accedió a que se alterara el orden de la prueba para que testificaran ante su presencia dos (2) de los testigos de coartada, aun cuando la defensa sólo solicitó formalmente una deposición videomagnetofónica.[27] De hecho, el juez aclaró que prefería que se alterara el orden de la prueba para así poder ver el *demeanor* de los testigos y poder evaluar mejor la prueba.[28] A pesar de esta concesión, la defensa prefirió la deposición videomagnetofónica, solicitud que también fue concedida por el juez de instancia.[29] Por otro lado, aunque el tribunal en un principio no quiso admitir la mencionada deposición, al amparo de la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, a petición de la defensa, decidió reconsiderar su determinación y admitir aquellas porciones de la deposición que entendió más relevantes e importantes para la defensa del acusado.[30]

En cuanto a las intervenciones del juez durante el juicio, el apelante se limitó a indicar las páginas de la transcripción en las que se encontraban algunas de ellas, sin

---

[26] "LIC. GONZALEZ: ... y yo le digo honestamente, Juez, nosotros conocemos que usted eh ... su señoría siempre ha demostrado para todas las partes la misma ecuanimidad ...." T.E., pág. 346.

[27] Ver T.E., págs. 363–365.

[28] Ver T.E., pág. 373.

[29] Ver T.E., pág. 365.

[30] Ver T.E., págs. 1112–1113.

detallar en su alegato las expresiones particulares del tribunal de instancia al respecto y las razones para catalogarlas como lesivas a su posición.

La única intervención del tribunal que el apelante menciona con algunos detalles es la cualificación, a su entender errónea, del perito presentado por el Ministerio Público, sin permitirle preguntar sobre sus cualificaciones, a pesar de que se trataba de un médico en entrenamiento.

Reiteradamente, este Tribunal ha señalado que la Regla 53 de Evidencia, 32 L.P.R.A. Ap. IV,([31]) no requiere que el perito que vaya a testificar en un juicio sea un experto en el sentido estricto ni que esté debidamente licenciado o autorizado a ejercer determinada profesión. Es cualificable cualquier persona que, a juicio del juez que preside la causa, tiene alguna preparación o conocimiento especial sobre la materia objeto de la declaración. *San Lorenzo Trad., Inc. v. Hernández,* 114 D.P.R. 704, 710–711 (1983). Véanse, además: *Pueblo v. Calderón Álvarez,* 140 D.P.R. 627 (1996); *Pueblo v. Rodríguez Otero,* 90 D.P.R. 861, 862 (1964).

Específicamente en los casos de peritos médicos, este Tribunal indicó, en *Pueblo v. Rodríguez Otero,* supra, que la capacidad de un médico para declarar como perito no depende de si el médico posee o no una licencia para practicar su profesión en determinado lugar, sino de la preparación, entrenamiento y experiencia del médico.

En el caso de autos, cuando la defensa objetó el testimonio del perito porque éste no había sido —hasta ese momento— cualificado, el tribunal le hizo varias preguntas al

---

([31]) La Regla 53 de Evidencia, 32 L.P.R.A. Ap. IV, lee como sigue:

"(A) Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberán ser probados antes de que el testigo pueda declarar como perito.

"(B) El especial conocimiento, destreza, experiencia, adiestramiento o instrucción de un testigo pericial podrán ser probados por cualquier evidencia admisible, incluyendo su propio testimonio."

perito para cerciorarse de que estuviera capacitado para declarar. Luego de contestadas todas las preguntas, el tribunal entendió que estaba cualificado para testificar. Así las cosas, la defensa quiso hacerle unas preguntas al perito, lo que no fue permitido por el tribunal por entender que el perito ya había sido cualificado.

A tales efectos, cuando el testimonio de un perito es objetado por una parte, lo único que la Regla 53(B) de Evidencia, 32 L.P.R.A. Ap. IV, va a requerir es que se establezca la cualificación de ese perito con anterioridad a que se reciba el testimonio pericial. Durante este procedimiento, que no es otro que el procedimiento de determinaciones preliminares a que se refiere la Regla 9(A) de Evidencia, 32 L.P.R.A. Ap. IV, el tribunal recibirá cualquier evidencia admisible que, según su criterio, capacite al perito para declarar. Dicha evidencia puede surgir del propio testimonio del perito. Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia, op. cit.*, 1985, Cap. VII, pág. 245. Por lo tanto, la Regla 53 de Evidencia, *supra,* no requiere que la parte que objetó el testimonio del perito, y que exigió que éste fuera capacitado antes de declarar, le haga todas aquellas preguntas que entienda pertinentes antes de que el tribunal pueda determinar que está capacitado para testificar. Si esa parte está interesada en impugnar a ese testigo en cuanto a su capacidad para declarar como perito, puede hacerlo durante su contrainterrogatorio. En efecto, así la defensa lo hizo cuando le tocó su turno de contrainterrogatorio. T.E., págs. 584–588.

Por otro lado, el hecho de que un juez intervenga, ya sea para exigirle a un abogado que fundamente correctamente sus objeciones o la admisibilidad de cierta evidencia, para hacerle preguntas a los testigos de una de las partes si tiene dudas sobre su testimonio, o para aclarar algún asunto que no está claro, no significa que éste haya prejuzgado el caso. Por el contrario, lo que demuestra es su interés en que el proceso se lleve a cabo correctamente y a

tenor con las disposiciones legales pertinentes, además de un interés por disipar sus dudas para poder emitir una determinación justa y acertada.

Al respecto, este Tribunal se ha expresado de la manera siguiente:

El juez no es simple árbitro de un torneo medieval entre la defensa y el Ministerio Público, o el retraído moderador de un debate. El juez es partícipe y actor principal en el esclarecimiento de la verdad y en la determinación de lo que es justo. *El juez puede y debe ser en casos vistos con o sin jurado, aunque con mayor libertad en los segundos, participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto oficio reclama. Puede el juzgador en consecuencia requerir la declaración de determinados testigos o interrogar a los que las partes ofrezcan, siempre que su conducta se mantenga dentro de las normas de sobriedad y equilibrio que impiden que el juez sustituya, en vez de que complemente, la labor del fiscal o del defensor. Nada impide que un juez, para aclarar un testimonio o una situación, o consciente de que no se han formulado algunas preguntas centrales para la determinación de lo sucedido verdaderamente en un caso, se tome la iniciativa a dicho efecto.* (Énfasis suplido.) *Pueblo v. Pabón*, 102 D.P.R. 436, 440 (1974). Véase, además, *Pueblo v. Robles González*, 125 D.P.R. 750, 766–767 (1990).

Por último, conviene señalar que del registro no se desprende la más mínima insinuación, por parte de la defensa, de que el juez estuviese actuando de manera parcializada, como tampoco surge iniciativa alguna de esta parte en solicitar la inhibición del juez sentenciador.

Dado que de las páginas de la transcripción de la prueba citadas por la defensa —y de la totalidad de dicho documento no se desprende que el juez en este caso haya actuado indebida y parcializadamente— sería equivocado concluir que la conducta de dicho magistrado tuvo el efecto de vulnerar el derecho del acusado a un juicio justo e imparcial. Diferimos, a su vez, de la premisa implícita a la que hace alusión el apelante sobre la "atmósfera que se respira durante el juicio" fundamentada en una supuesta

"conducta de presión" de parte del juez sentenciador hacia la defensa.

Por todo lo antes expuesto, concluimos que el error señalado no se cometió.

## VII

El último señalamiento del apelante versa sobre el alegado error cometido por el tribunal sentenciador al condenar al acusado a cumplir concurrentemente una pena de quince (15) años en cada uno de los tres (3) casos, a pesar de existir un informe presentencia favorable al apelante con amplia prueba de atenuantes. Aduce que esta acción del tribunal demuestra su prejuicio contra del acusado. Este planteamiento del acusado es inmeritorio.

El Art. 99(a) del Código Penal de Puerto Rico, 34 L.P.R.A. Ap. II, ordena la imposición de una sentencia fija de quince (15) años de presidio a toda aquella persona convicta del delito de violación técnica. Dicho artículo permite al tribunal sentenciador, en el ejercicio de su discreción y de existir circunstancias atenuantes, reducir la pena hasta un mínimo de diez (10) años.

La parte apelante en este caso no ha demostrado que el tribunal apelado haya abusado de su discreción al imponer la pena en cuestión. El mero hecho de que del informe presentencia surja información hasta cierto punto favorable al acusado, no quiere decir que el tribunal esté obligado a atenuar la pena fija que la ley impone en estos casos. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80, 92 (1988). A lo que sí un acusado tiene derecho en cuanto al informe presentencia es a que se le informe de los aspectos negativos que aparezcan en éste y a que se celebre una vista donde tenga oportunidad de controvertirlos. *Pueblo v. Torres Estrada*, 112 D.P.R. 307, 311 (1982). Por otro lado, aunque el tribunal no atenuó la pena impuesta, en el ejercicio de su discreción, le impuso al acusado el cumplimiento concurrente

de las penas, a pesar de que resultó convicto de tres (3) cargos por violación técnica.[32]

Es norma reiterada por este Tribunal que un tribunal apelativo no ha de intervenir con el ejercicio de la discreción del juez de instancia en la imposición de la pena, salvo en casos claros de abuso de discreción. *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 371 (1991); *Pueblo v. Rivera Torres*, 121 D.P.R. 128, 140 (1988). Véase, además, *Pueblo v. Chévere Heredia*, supra, pág. 38. En ausencia de demostración de abuso de discreción por parte del tribunal sentenciador, no nos corresponde intervenir en el ejercicio de su discreción al establecer una pena fija dispuesta por ley.

Por las consideraciones anteriores, estamos conforme con la sentencia que hoy emite este Tribunal para confirmar el dictamen emitido por el entonces Tribunal Superior de Puerto Rico, Sala de Ponce, objeto del presente recurso.

---

[32] La Regla 179 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, lee como sigue:

"Cuando una persona fuere convicta de un delito, el tribunal sentenciador, al dictar sentencia, deberá determinar si el término de prisión impuesto habrá de cumplirse consecutiva o concurrentemente con cualquiera o cualesquiera otros términos de prisión. Si el tribunal omitiere hacer dicha determinación, el término de prisión impuesto se cumplirá concurrentemente con cualesquiera otros que el tribunal impusiere como parte de su sentencia, o con cualesquiera otros que ya hubieren sido impuestos a la persona convicta."