EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Javier Zeno Torres<br><br>Recurrido | Certiorari<br><br>2022 TSPR 149<br><br>211 DPR \_\_\_ |

Número del Caso: CC-2022-039

Fecha: 16 de diciembre de 2022

Tribunal de Apelaciones:

    Panel VIII

Oficina del Procurador General:

    Lcdo. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocuardor General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Lisa Mónica Durán
    Procuradora General Auxiliar

Materia: Derecho probatorio - La admisibilidad de una declaración jurada anterior como prueba sustantiva es limitada a las partes que cumplen con el crisol de los requisitos establecidos en la Regla 802(a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 802(a).

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

          v.           CC-2022-0039     Certiorari

Javier Zeno Torres

     Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 16 de diciembre de 2022.

En esta ocasión nos corresponde evaluar si una declaración jurada anterior prestada por un testigo de cargo es admisible como prueba sustantiva.

Resolvemos que de conformidad con lo establecido en la Regla 802(a) de las Reglas de Evidencia, *infra*, la admisibilidad de la declaración anterior como prueba sustantiva es limitada a las partes que cumplen con el crisol de los requisitos establecidos en la Regla.

**I**

La controversia ante nos surge en medio de un juicio por jurado celebrado en contra del Sr. Javier Zeno Torres (señor Zeno Torres), quien fue acusado por

el asesinato del Sr. Abismael Alago Negrón (Abismael).[1] Tras iniciar el juicio en su fondo, el 25 de octubre de 2021, el Ministerio Público presentó el testimonio de la testigo de cargo, la Sra. Hylarie Jiménez Chico (testigo) que se extendió hasta el 26 de octubre de 2021. Durante la vista, el Fiscal interrogó a la testigo sobre los hechos relacionados con la muerte de Abismael, quien era su pareja en ese momento. Así, ante expresiones de no recordar ciertos hechos en su testimonio, el Fiscal utilizó la declaración jurada que ella suscribió ante el Agente de la Policía y el Fiscal el 8 de diciembre de 2018 -día después en que ocurrieron los hechos-, como escrito para refrescar memoria al amparo de la Regla 613 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 613, y, además, ante claras contradicciones de su testigo con lo que había declarado anteriormente, la impugnó con tal declaración jurada. El Fiscal determinó limitar el interrogatorio directo sobre sólo una parte del relato de los hechos brindados por la testigo en la declaración jurada. Así, este nada indagó sobre la parte que relaciona al padre de la testigo, quien también fue procesado en el caso de epígrafe. Veamos.

---

[1] En lo pertinente, el Ministerio Público sometió acusaciones contra el señor Torres Zeno por infracción al Artículo 93 del Código Penal de 2012, según enmendado, 33 LPRA sec. 5142 (Asesinato en primer grado); Art. 5.07 de la *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000, según enmendada (Posesión y uso de armas largas, semiautomática, automáticas, etc.), y Art. 5.15 de la *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000, según enmendada (Disparar o apuntar un arma de fuego).

**<u>Testimonio de Hylarie Jiménez Chico</u>**

**Directo del Ministerio Público**

La testigo pudo relatar sobre parte de los hechos ocurridos el 7 de diciembre de 2018 en el Residencial *Las Mesetas* en Arecibo. Específicamente, narró que observó cuando llegó un vehículo de motor -oscuro y viejo-[2] en el que andaban 3 personas -sin poder llegar a ver al que conducía-, y expresó que se bajaron 2 personas. Describió la vestimenta y el físico de las dos personas que se bajaron del lado del pasajero en el área delantera y trasera del vehículo.[3] Indicó en cuanto al pasajero del frente que se bajó con "un arma larga negra" con la que disparó a Abismael desde un transformador de electricidad. Explicó que escuchó un disparo, miró a la persona con el arma y rápido pudo observar que Abismael cayó al suelo por el disparo que le causó la muerte.[4]

En cuanto al proceso de identificación del asesino de Abismael, el Fiscal le preguntó a la testigo sobre el nombre que ella proveyó de la persona identificada en la declaración jurada, y la testigo declaró haberle indicado al Agente y al Fiscal que el asesino había sido una persona que en el residencial conocían por el apodo de "Pupi". Añadió que lo había visto en el Residencial *Las Mesetas* aproximadamente en

---

[2] 2:13 p.m. de la grabación de 25 de octubre de 2021.

[3] 2:13-2:24 p.m. de la grabación de 25 de octubre de 2021.

[4] 2:13-2:39 p.m. de la grabación de 25 de octubre de 2021.

10 ocasiones.[5] Manifestó en su testimonio que, al momento de los hechos, no sabía de otra persona en el residencial que se llamara de esa forma.[6]

Ahora Bien, en cuanto al proceso de identificación inicial, el proceso de identificación con foto realizado por el Agente, durante el interrogatorio la testigo primero señaló que inicialmente marcó el #6 y sostuvo que cuando el Agente le preguntó si estaba segura de que esa era la persona, respondió que no sabía. Acto seguido señaló que no dijo la verdad al seleccionar al #6 por estar confundida, ya que todos los hombres en el line-up se parecían. Después sostuvo que el Agente le preguntó si estaba segura y procedió a señalar el #9 como la persona que disparó a Abismael.[7]

Ante esta versión de lo ocurrido, el Fiscal procedió a entregarle la **declaración jurada** a la testigo para que revisara parte de la página 6 y la totalidad de la página 7. Como resultado de esta revisión de su declaración jurada salió a relucir en su testimonio en sala que ciertamente cuando se hizo la identificación fotográfica, la testigo primero señaló a la persona de la foto #6 y posteriormente, procedió a señalar a la persona en la foto #9, pero no por estar "confundida" o porque "todos se le parecían", sino **porque tenía miedo por ella y sus hijos**.[8]

---

[5] 3:38 p.m. de la grabación de 25 de octubre de 2021.

[6] 3:44 p.m. de la grabación de 25 de octubre de 2021.

[7] 3:49-3:52 p.m. de la grabación de 25 de octubre de 2021.

[8] 3:54-3:58 p.m. de la grabación de 25 de octubre de 2021.

Después el Fiscal le preguntó a la testigo si la persona que asesinó a Abismael se encontraba en sala. **La contestación de la testigo a esta trascendental pregunta fue que no; que el asesino de Abismael no se encontraba presente en la sala.** Ante esto, el Fiscal parafraseó la pregunta inquiriéndole ahora a la testigo si la persona que esta le había señalado al Agente como la que "se parecía" al asesino de Abismael, se encontraba en sala. En esta ocasión la testigo respondió en la afirmativa e indicó que se encontraba sentada al lado del abogado de defensa, el Lcdo. Fernando Padrón Jiménez.[9] Así, tras una discusión en el estrado, la Jueza instruyó al Jurado señalándole lo siguiente: "la testigo ha identificado en sala al acusado como la persona que se le parecía al que le disparo a Abismael, según lo que le testificó al agente cuando marcó el 'line-up'".[10]

Ante esto, el Fiscal procedió a preguntarle a la testigo si en vistas previas celebradas con anterioridad en el Tribunal había identificado al acusado, el señor Zeno Torres -conocido como "Pupi". A esto la testigo contestó no recordar. Entonces el Fiscal solicitó que se le reprodujera a la testigo mediante audífonos parte de su testimonio vertido durante la vista preliminar en alzada (VPA) el 25 de abril de 2019, para que esta pudiera refrescar su memoria.[11]. Así, tras escuchar su testimonio durante la VPA, la testigo

---

[9] 4:04 p.m. de la grabación de 25 de octubre de 2021.

[10] 4:05-4:06 p.m. de la grabación de 25 de octubre de 2021.

[11] 4:19 p.m. de la grabación de 25 de octubre de 2021.

confirmó haber identificado en esa ocasión al acusado como el que le disparó a Abismael.[12]

**Contrainterrogatorio de la Defensa**

De entrada, el abogado de defensa indagó sobre las circunstancias al momento de la identificación del acusado en la VPA y la vista preliminar (VP), al igual que lo ocurrido durante la vista de supresión de evidencia. Allí, la testigo relató que había tenido dificultad para identificar al acusado como el asesino en la VPA y además, expresó que le había indicado al Fiscal en la VP que ella no estaba segura de que el acusado era la persona que vio con el "arma larga negra".[13] Posterior a ello, la defensa cuestionó sobre el temor que la testigo había expresado que sentía el día en que suscribió la declaración jurada -durante procesos anteriores como en la vista de supresión de evidencia celebrada-. Así, la testigo afirmó que su miedo era que el Departamento de la Familia interviniera y por sus hijos.[14]

Luego, el abogado de defensa le enseñó el cartón de las fotos del "line up" a la testigo marcado como *exhibit* y la testigo precisó que sí estuvo confundida cuando señaló al #9 en la identificación fotográfica. Además, explicó que el lugar de los hechos estaba oscuro y todos en las fotografías se parecían.[15] Respondió en la afirmativa, ante la pregunta

---

[12] 4:20 p.m. de la grabación de 25 de octubre de 2021.

[13] 4:35-4:39 p.m. de la grabación de 25 de octubre de 2021.

[14] 4:39-4:40p.m. de la grabación de 25 de octubre de 2021.

[15] 4:45 p.m. de la grabación de 25 de octubre de 2021.

de que no tenía la certeza de quien cometió los hechos.[16] Finalmente, estuvo de acuerdo con el abogado al expresar que siempre había tenido una duda real sobre ello como expresó en vistas anteriores y que todavía, a ese momento del juicio, persistía la misma.[17]

**Redirecto del Ministerio Público**

Durante el redirecto, el Fiscal retomó lo relacionado al temor al Departamento de la Familia que la testigo expresó con la defensa, y en cuanto a ello, la testigo reafirmó que su temor estaba relacionado a la posibilidad de que, a raíz de la investigación del caso, el Departamento de la Familia interviniera para remover la custodia de sus hijos menores de edad.[18] Esto, porque en su apartamento habían armas y drogas ilegales.[19] **Sin embargo, admitió que ese temor no se lo manifestó al Agente ni lo especificó en la declaración jurada.**[20] Así, al mostrarle nuevamente la declaración jurada a la testigo, y ante preguntas del Fiscal, la testigo admitió haber sido inconsistente en el temor expresado en la declaración jurada sobre el momento de la identificación del acusado en el cartón de fotos.[21]

---

[16] 4:53 p.m. de la grabación de 25 de octubre de 2021.

[17] 4:53-4:54 p.m. de la grabación de 25 de octubre de 2021.

[18] 9:33-9:34 a.m. de la grabación de 26 de octubre de 2021.

[19] Íd. La testigo señaló que tales armas y drogas no le pertenecían a ella.

[20] 9:34 a.m. de la grabación de 26 de octubre de 2021.

[21] 9:36 a.m. de la grabación de 26 de octubre de 2021.

Por otro lado, y en cuanto a la expresión de la testigo de que el acusado solo "se parecía a Pupi", el Fiscal solicitó a la testigo la revisión de las notas realizadas por el Agente mientras la entrevistaba -que fueron admitidas e identificadas como *exhibit*- junto a la declaración jurada.

Al así hacerlo, el Fiscal pudo confrontar a su testigo con otra inconsistencia con relación a lo expresado con anterioridad, al decir ahora que el acusado solo "se parecía a Pupi". Específicamente, la inconsistencia surgió así. El Fiscal le preguntó a la testigo lo siguiente:

-Fiscal: "Entre los lugares que yo le pedí que leyera en este momento, y todos los demás que usted ha podido revisar, puede decirle a los miembros del jurado en cuál de esos lugares en sus descripciones que ha hecho de los hechos y de "Pupi" usted indicó en algún momento […] que la persona que usted vio disparar a Abismael […] "se parecía a Pupi"; en cuántas ocasiones usted lo dijo ahí.

- Testigo: "¿Ahí? En ninguna".

**Recontrainterrogatorio de la Defensa**

Primeramente, a preguntas del abogado la testigo señaló que había sido cándida al admitir la inconsistencia de la declaración jurada y el testimonio en sala.[22] Luego, y nuevamente a preguntas del abogado, esta señaló que siempre ha tenido dudas sobre si el acusado era la persona que vio el día de los hechos.[23] Además, expresó sus dudas al momento

---

[22] 9:48 a.m. de la grabación de 26 de octubre de 2021.

[23] 9:51 a.m. de la grabación de 26 de octubre de 2021.

de identificar el #6 y el #9 en el proceso de identificación por fotos.[24]

Posteriormente, el 27 de octubre de 2021, luego de haber desfilado toda la prueba del Ministerio Público, **el Fiscal solicitó al Tribunal de Primera Instancia que se admitiera la declaración jurada suscrita por la testigo el 8 de diciembre de 2018 como prueba sustantiva, que se instruyera al jurado al respecto y que se le leyera al jurado la declaración en su totalidad previo a la deliberación.** El fundamento para reafirmar la solicitud -**que se había hecho antes en el estrado**[25]- se debió a que la inconsistencia de versiones sobre los hechos sustanciales entre lo que la testigo declaró en juicio y la declaración jurada anterior cumplió con los requisitos bajo la Regla 802(a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 802, por lo que era admisible como prueba sustantiva. Sin embargo, la defensa objetó fundamentando su objeción en Pueblo v. Adorno Cabrera, 133 DPR 839 (1993).[26]

En síntesis, el Ministerio Público argumentó que la declaración jurada anterior era inconsistente con el testimonio vertido en corte por la testigo, había sido dada sujeta a perjurio y la defensa del recurrido había tenido la oportunidad de contrainterrogarla, por lo cual entendió que

---

[24] 9:51-9:52 a.m. de la grabación de 26 de octubre de 2021.

[25] Véase nota al calce Núm. 19 de la Resolución del Tribunal de Apelaciones.

[26] Pueblo v. Adorno Cabrera modificado como Pueblo v. Miro González, 133 DPR 839 (1993).

se cumplió con los requisitos bajo la Regla 802(a) de las Reglas de Evidencia, *supra*. Asimismo, según arguyó el Ministerio Público, cualquier incongruencia entre el testimonio de la testigo y su declaración anterior era suficiente para cumplir con los requisitos de admisibilidad como prueba sustantiva establecidos en la Regla 802(a) de las Reglas de Evidencia, *supra*, y Pueblo v. Adorno Cabrera, *supra*. Especificó que las inconsistencias en la identificación del acusado y en las circunstancias que provocaron el temor que describió la testigo, hacían que esa declaración anterior fuera admisible como prueba sustantiva.

Por su parte, en resumen, la defensa del acusado alegó, citando también a Pueblo v. Adorno Cabrera, *supra*, que para que la declaración anterior pudiese ser admitida como prueba sustantiva en un caso en el que la misma constituye la única prueba que vincula al acusado con los delitos, el Ministerio Público tenía la obligación de presentar prueba demostrativa adicional que sustentara o corroborara la confiabilidad de la declaración anterior que se pretendía admitir.

**Tras escuchar y analizar los argumentos de ambas partes, el foro primario denegó el pedido del Ministerio Público de admitir como evidencia sustantiva la declaración jurada anterior prestada por la testigo.**[27]

En desacuerdo, el Fiscal solicitó la reconsideración de la determinación en corte abierta.[28] Reiteró sus

---

[27] 9:25 a.m. de la grabación de 27 de octubre de 2021.

[28] 10:25 a.m. de la grabación de 27 de octubre de 2021.

planteamientos y puntualizó que no existe un requisito adicional en la Regla 802(a) de las Reglas de Evidencia, *supra*, que establezca que el hecho de que el testigo se siente a testificar y acepte la inconsistencia sea suficiente para denegar la admisibilidad de ese documento como prueba sustantiva.[29] Añadió que el efecto final es que, al momento de irse a deliberar, el jurado pueda utilizar el contenido de lo expresado en la declaración jurada anterior sin limitarse al recuerdo de lo declarado en corte.[30] Por su parte, la defensa reiteró también los fundamentos expresados anteriormente.

Tras considerar lo anterior, el Tribunal de Primera Instancia denegó nuevamente la admisión como prueba sustantiva de la declaración jurada en controversia.[31] Ese mismo día, el Ministerio Público presentó por escrito una moción de reconsideración con los mismos argumentos presentados en la vista.[32]

El Tribunal de Primera Instancia notificó una *Resolución* mediante la cual reiteró la denegatoria de la solicitud del Ministerio Público. A pesar de que el foro primario reconoció la admisibilidad de una declaración jurada anterior conforme a la Regla 802(a) de las Reglas de Evidencia, *supra*, sostuvo que, por las circunstancias

---

[29] 10:27 a.m. de la grabación de 27 de octubre de 2021.

[30] 10:32 a.m. de la grabación de 27 de octubre de 2021.

[31] 10:43 a.m. de la grabación de 27 de octubre de 2021.

[32] Moción de reconsideración, Apéndice, pág. 58.

particulares del caso, no se encontraba en posición suficiente de atender la solicitud y declaró "No Ha Lugar" la petición del Ministerio Público. Explicó que el Ministerio Público no lo puso en posición de forma suficiente sobre cómo la alegada inconsistencia entre el testimonio de la testigo en sala y lo expresado en la declaración jurada anterior era esencial al establecimiento de los elementos constitutivos de delito que requiera su admisibilidad como prueba sustantiva, citando a Pueblo v. Adorno Cabrera, *supra*, pág. 863.[33]  Añadió que el Ministerio Público buscaba establecer que cualquier inconsistencia conllevaría la admisión automática de una declaración jurada anterior como prueba sustantiva. Conforme a ello, determinó que la declaración jurada y el testimonio de la testigo en sala eran esencialmente consistentes y constituían acumulación de prueba. Ello, tras entender que en las circunstancias particulares del caso en que la totalidad de la declaración jurada contiene manifestaciones y/o admisiones incriminatorias del coacusado y prueba de referencia, sin establecer una inconsistencia sustancial no es procedente en estricto derecho.[34]

Por otro lado, el Tribunal de Primera Instancia **puntualizó que el Ministerio Público -mediante su interrogatorio- logró que la testigo reconociera frente al jurado la inconsistencia entre su testimonio en corte y lo**

---

[33] Resolución del Tribunal de Primera Instancia, Apéndice, págs. 67-68.

[34] Íd., pág. 68.

**expresado en su declaración jurada anterior para cumplir con el propósito de que las inconsistencias fueran escuchadas por el Jurado**. Así, concluyó que "la admisión como prueba sustantiva de la declaración jurada de la testigo, bajo las circunstancias particulares del presente caso, causarían un perjuicio indebido, confusión y desorientación del Jurado".[35] Además, determinó que "no es necesario que la declaración jurada sea leída al Jurado en su totalidad, máxime ante el perjuicio indebido, confusión y desorientación que puede ocasionar al Jurado".[36]

En cuanto a la credibilidad de la testigo, **el foro primario estableció que se encuentra ante la consideración del jurado para ser adjudicada como resultado del uso de los mecanismos de impugnación por parte del Fiscal**.[37] Finalmente, el foro primario mencionó que ambas partes reconocieron que la referida declaración jurada contiene elementos que deben ser excluidos de la consideración del jurado debido a que constituyen manifestaciones de y sobre otro coacusado, por lo que podría provocar la posible confusión y desorientación del jurado.[38]

En desacuerdo, el Procurador General (PG) recurrió ante el Tribunal de Apelaciones mediante un recurso de *certiorari* en el que señaló lo siguiente:

---

[35] Íd.

[36] Íd.

[37] Íd., pág. 69.

[38] Íd.

> Erró el Tribunal de Primera Instancia al no admitir conforme a la Regla 802 de las Reglas de Evidencia, como prueba sustantiva, la declaración jurada previa de la señora Jiménez, cuyo contenido resulta inconsistente con lo declarado durante el juicio.

En cumplimiento con lo ordenado por el Tribunal de Apelaciones, la defensa del acusado presentó una *Moción en cumplimiento de orden* mediante la cual sostuvo que las alegadas inconsistencias no son sobre aspectos esenciales. Alegó que, de ser consideradas como elementos esenciales, el Ministerio Público no cumplió con presentar evidencia de las circunstancias que motivaron el cambio de testimonio en sala para hacerlo falso o poco creíble ni prueba demostrativa adicional sobre la confiabilidad de la declaración jurada conforme a lo establecido en Pueblo v. Adorno Cabrera, *supra*, págs. 863-864. Específicamente, peticionó que de ser admitida la declaración jurada anterior como prueba sustantiva "**se deberán tomar las providencias para que dicha prueba se circunscriba a las dos alegadas inconsistencias y no a la totalidad de la declaración jurada**". (Énfasis suplido).[39]

El Tribunal de Apelaciones denegó la expedición del recurso al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, y concluyó que el foro primario "no incurrió en error de derecho, ni en abuso de discreción al denegar la solicitud de admisibilidad de la declaración jurada de la testigo del 8 de diciembre de 2018,

---

[39] Moción en cumplimiento de orden, Apéndice, pág. 94.

como prueba sustantiva en el caso de epígrafe".[40] En lo pertinente, el foro apelativo intermedio razonó lo siguiente:

> **Surge de la grabación del juicio que la totalidad de la declaración jurada en cuestión no estuvo sujeta a contrainterrogatorio por parte de la defensa del recurrido. Reiteramos que fue el Fiscal quien determinó no interrogar sobre esa parte del contenido de la declaración jurada. Un examen de la regrabación del juicio revela que en el interrogatorio directo el Ministerio Público solamente se enfocó en los hechos que se exponen en la declaración jurada desde la segunda mitad de la página 4 en adelante.** Concretamente, solo se le preguntó sobre los hechos desde el momento en que la Testigo, el occiso y un tercero se encontraban en la cancha del complejo donde residían (momentos antes de la muerte de Abismael) hasta la fase investigativa. **De este modo se omitió todo lo relacionado al altercado del occiso con el padre de la Testigo y otros hechos posteriores que están relacionados al padre. Ello representa aproximadamente la mitad de los hechos relatados en la declaración jurada, la cual consta de 8 páginas.**
>
> **Tal cual esbozado, tanto la Regla 802 de Evidencia, supra, como la jurisprudencia, exigen que la oportunidad de contrainterrogar sobre la declaración anterior sea plena y efectiva como requisito indispensable para su admisibilidad.** Así pues, actuó correctamente el foro de instancia al no permitir que se admitiera la declaración jurada y fuese leída **en su totalidad al jurado, toda vez que se incumplió con el requisito de contrainterrogatorio según esbozado.** (Subrayado en el original; énfasis nuestro).[41]

En desacuerdo, el PG recurre ante este Tribunal mediante un recurso de *certiorari* que puntualiza el siguiente señalamiento de error:

> El Tribunal de Apelaciones erró y abusó crasamente de su discreción al no admitir como prueba sustantiva, de forma contraria a la Regla 802 de Evidencia, una declaración jurada hecha

---

[40] Resolución del Tribunal de Apelaciones, Apéndice, pág. 108.

[41] Íd., págs. 108-109.

por la Testigo en el proceso investigativo, a pesar de que parte de esta es patentemente inconsistente con el testimonio prestado en corte abierta, frente al Jurado.

El PG alega que la declaración jurada anterior es admisible -toda o en parte- para establecer la verdad de lo aseverado por la testigo según lo dispone la Regla 802 de las Reglas de Evidencia, *supra*. Por ello, plantea como alternativa que el Tribunal de Apelaciones podía limitar la admisión de la declaración jurada anterior a aquello sobre lo cual se interrogó y contrainterrogó.

Tras ordenar la expedición del recurso el 29 de abril de 2022, el PG presentó su *Alegato* mientras que el recurrido no compareció. En lo pertinente, el PG, entre otros argumentos arguyó que "[a] pesar de que de la regrabación de la vista se desprende que el Pueblo indicó que el uso de la declaración jurada era sustantivo, el foro primario insistió en confundirla con la prueba de impugnación".[42] Además, puntualiza que "[s]orprendentemente, a pesar de que la inconsistencia gira en torno a la identificación del acusado del delito[,] el foro primario entendió que el Ministerio [Público] no lo colocó en posición de 'forma suficiente' sobre cómo la inconsistencia era esencial para el establecimiento de los elementos constitutivos del delito".[43]

Pasemos, pues, a exponer el marco jurídico para resolver el asunto presentado ante nuestra consideración.

---

[42] Alegato de el Pueblo, págs. 9-10.

[43] Íd., pág. 10.

**II**

**A.**

La Sexta Enmienda de la Constitución de Estados Unidos garantiza el Derecho que tienen todos los acusados de delito a confrontar los testigos que se presenten en su contra durante cualquier proceso criminal.[44] Este es un derecho fundamental que aplica a los estados al amparo de la Cláusula del Debido Proceso de Ley de la Decimocuarta Enmienda de la Constitución federal.[45] Asimismo, la Constitución de Puerto Rico reconoce un Derecho similar al disponer que los acusados tendrán derecho a "carearse con los testigos de cargo" en procedimientos criminales.[46]

De esta forma, las disposiciones mencionadas son conocidas como Cláusulas de Confrontación, que recogen el principio fundamental de colocar al acusado en una posición adecuada vinculada con el debido proceso de ley al tener la oportunidad para defenderse de las acusaciones del Estado con la exigencia de poner a su alcance "los medios de prueba para impugnar los testigos, atacar su credibilidad y todo recurso análogo encaminado a erradicar la falsedad del juicio y evitar el desvío de la justicia".[47] Anteriormente, este Tribunal ha reconocido que el Derecho a la Confrontación, fundamentalmente, tiene tres (3) vertientes procesales que

---

[44] Enmda. VI, Const. EE. UU., LPRA, Tomo 1.

[45] Pueblo v. Guerrido López, 179 DPR 950, 959 (2010) (citando a Pueblo v. Acosta Escobar, 101 DPR 886, 889 (1974)).

[46] Art. II, Sec. 11, Const. de PR, LPRA, Tomo 1, ed. 2008, pág. 343.

[47] Pueblo v. Guerrido López, *supra*, pág. 958.

son: (1) el derecho al careo o confrontación cara a cara con los testigos adversos; (2) el derecho a contrainterrogar, y (3) el derecho a que se excluya la prueba de referencia que intente presentar el Ministerio Público.[48]

Destacamos que, "el fundamento principal para la exclusión de prueba de referencia es la falta de oportunidad para contrainterrogar".[49]

**B.**

Las Reglas de Evidencia -de 2009- regulan la forma y el proceso en que la prueba es admisible ante los tribunales. Particularmente, la Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c), define la prueba de referencia como "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Por su parte, el inciso (b) de la citada Regla 801 define al declarante como "la persona que hace una declaración".[50] Conforme a lo anterior, al comentar sobre la Regla 801 de las Reglas de Evidencia, *supra*, el Profesor Chiesa aduce que:

> Como sabemos, esas declaraciones anteriores son admisibles para impugnar la credibilidad del testigo, como se dispone en la regla 608(B)(4). Esto no constituye prueba de referencia, pues las declaraciones anteriores no se ofrecen para probar las aseveraciones contenidas en las declaraciones. **No obstante, cuando el fin**

---

[48] Íd.

[49] E.L. <u>Derecho procesal penal de Puerto Rico y Estados Unidos</u>, Bogotá, Ed. Forum, 1992, Vol. 1, pág. 569.

[50] Debemos mencionar que una declaración es testimonial y, por consiguiente, inadmisible en corte, cuando su propósito principal es crear un sustituto extrajudicial para el testimonio que se ofrecería en corte. Véase <u>Pueblo v. Santos Santos</u>, 185 DPR 709, 723 (2012).

**probatorio es probar la verdad de la declaración anterior del testigo, entonces se satisface la definición de prueba de referencia en la Regla 801. Pero como el "declarante" es un testigo en corte, la parte afectada por la declaración anterior tiene la oportunidad de contrainterrogar al declarante-testigo, no solo sobre su testimonio en corte, sino también sobre sus declaraciones anteriores y cotejar los peligros de la prueba de referencia. De ahí que se admitan partes de, o todas, las declaraciones anteriores del testigo** […]. (Énfasis suplido).[51]

Como regla general, la prueba de referencia no es admisible, ya que la parte que se ve afectada por la declaración no tiene la oportunidad de confrontarse con el declarante, salvo en varias excepciones.[52]

Por su parte, la Regla 802 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 802, permite la admisión de declaraciones anteriores del testigo que se ofrecen en el juicio o vista con el propósito de probar la verdad de lo allí aseverado. En otras palabras, como excepción a la regla de exclusión de prueba de referencia, sería admisible una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a su declaración anterior, siempre que ésta fuere admisible de ser hecha por el declarante al testificar como testigo.[53]

---

[51] E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, 1ra ed., San Juan, Situm, 2016, pág. 259.

[52] Regla 804 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 804.

[53] Pueblo v. Adorno Cabrera, 133 DPR 839 (1993); Pueblo v. Torres Villafañe, 143 DPR 474 (1997) (Sentencia); Pueblo v. Stevenson Colón, 113 DPR 634 (1982); Pueblo v. Esteves Rosado, 110 DPR 334 (1980). Véase, también, OEG v. Rodríguez y otros, 159 DPR 98 (2003).

**C.**

Antes de discutir la Regla 802 (a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 802, debemos mencionar que la anterior Regla 63 de las Reglas de Evidencia de 1979 disponía que:

> Es admisible como excepción a la regla de prueba de referencia una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a la declaración anterior, siempre que dicha declaración fuere admisible de ser hecha por el declarante declarando como testigo.

En cuanto al cambio presentado en aquel entonces a la Regla 63 de las Reglas de Evidencia de 1979, este Foro en Pueblo v. Esteves Rosado, 110 DPR 334, 337-339 (1980), razonó que:

> La aprobación de esta Regla 63 modifica la doctrina prevaleciente, según la cual las manifestaciones anteriores de un testigo, incompatibles con su testimonio en el tribunal, sólo podían ser utilizadas para impugnar su credibilidad --por la parte que lo presentó o la contraria-- y no podían tomarse como prueba de la verdad de lo aseverado en ellas, por estimarse que constituirían prueba de referencia en ausencia de oportunidad de la parte contra quien se presenta de contrainterrogar al testigo en el momento en que hizo la declaración, y por no haber estado el declarante sometido a juramento ni haber sido observado su comportamiento (demeanor). Ello requería una instrucción al jurado al efecto de que sólo se considerarán las manifestaciones anteriores incompatibles, para fines de impugnación.
> Al presente, las autoridades y jurisdicciones que han optado por ampliar el ámbito de utilización de las declaraciones anteriores de un testigo como evidencia, lo han hecho convencidos de que la disponibilidad en el juicio del testigo para ser contrainterrogado en cuanto a lo declarado anteriormente, coloca al juzgador en una posición satisfactoria para evaluar la veracidad y confiabilidad de ambas versiones del testigo --en caso de ser inconsistentes-- ya que

puede observar su comportamiento (demeanor) al ser confrontado con la declaración anterior y oír cualesquiera explicaciones que tenga que ofrecer en cuanto a la inconsistencia. **En este sentido, es de rigor aclarar que la Regla 63 sólo aplica cuando el declarante está ocupando la silla testifical, durante, o luego de haberse cubierto su testimonio directo y estando sujeto al contrainterrogatorio.**

En cuanto a la declaración anterior, se resta importancia a la existencia del juramento, contrainterrogatorio y observación, ya que el primero ha perdido prestigio como elemento garantizador de veracidad y se ha concluido que la oportunidad posterior de contrainterrogatorio más la observación del testigo, como hemos expuesto, suplen la ausencia de esos factores al momento de hacerse la declaración. (Énfasis nuestro).[54]

Posteriormente, esta Curia sostuvo que:

Si bien antes de la aprobación de la citada Regla 63 las declaraciones anteriores de testigos sólo se admitían para fines de impugnación, *esa limitación ya no existe en nuestro ordenamiento jurídico.* Siempre que se cumplan los requisitos de la Regla, una declaración anterior no sólo será admisible para impugnar y rehabilitar a un testigo sino también "como prueba sustantiva para fortalecer el caso de la parte que presenta al testigo".[55]

Respecto a los cambios presentados en la Regla 802, el Profesor Vélez Rodríguez señala lo siguiente:

Consideraciones sobre la experiencia humana y su proyección en la *praxis* procesal figuran en la justificación del criterio de *necesidad*. Esta aportación es particularmente notable en materia de la previsión de llamado testigo recalcitrante. Durante varias décadas, la doctrina se ha enfrentado al problema de conjurar la recurrente situación de la postura recalcitrante y antagónica de los testigos en la silla testifical. Se trata del testigo evasivo,

---

[54] Pueblo v. Esteves Rosado, *supra*, págs. 337-339.

[55] OEG v. Rodríguez y otros, *supra*, pág. 114 citando a E.L. Chiesa, Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales, República Dominicana, Ed. Corripio, T. II, 2000, pág. 696. Véanse, además: Pueblo v. Adorno Cabrera, *supra*, págs. 858-860; Pueblo v. Esteves Rosado, *supra*.

quien guarda silencio o reiteradamente invoca no recordar o no querer contestar las preguntas del examinador. **En sus comentarios, señala el Comité Asesor Permanente que '… El llamado *turncoat witness* -aquél que por diversas razones de la conducta humana modifica el tenor de su testimonio directo- es una realidad palpable en nuestro sistema procesal.**[56]

La Regla 802 (a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 802 (equivalente a la anterior Regla 63 de las Reglas de Evidencia de 1979), dispone en lo que nos es pertinente que:

> No empece a lo dispuesto en la Regla 801 de este apéndice, **no se considerará prueba de referencia una declaración anterior si la persona declarante testifica en el juicio o vista sujeto a contrainterrogatorio en relación con la declaración anterior** y ésta hubiera sido admisible de ser hecha por la persona declarante en el juicio o vista, y:
>
> **(a) Es inconsistente con el testimonio prestado en el juicio o vista y fue dada bajo juramento y sujeta a perjurio;**
> .   .   .   .   .   .   .   .

La importancia del mencionado inciso radica en que permite usar tales declaraciones como prueba sustantiva sin que sea aplicable la regla de exclusión de prueba de referencia.[57]

La Regla vigente no permite **cualquier tipo de declaración anterior, porque dependerá de que esta haya sido: (1) brindada bajo juramento; y (2) sujeta a perjurio, brindando cierto grado de confiabilidad a dicha declaración.** De esta manera, las declaraciones juradas que prestan los

---

[56] E. Vélez Rodríguez, La prueba referencia y sus excepciones, InterJuris, San Juan, 2018, pág. 138.

[57] E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009, Puerto Rico, Publicaciones JTS, 2009, pág. 235.

testigos en la etapa investigativa de un caso criminal quedan incluidas entre las declaraciones admisibles como prueba sustantiva bajo la Regla 802(a) de las Reglas de Evidencia, *supra*.[58]

Ahora bien, la Regla 802 (a) de las Reglas de Evidencia, *supra*, permite que se pueda traer prueba de declaraciones anteriores como prueba sustantiva, siempre que la declaración anterior fuera bajo juramento sujeto a perjurio, y sea inconsistente con el testimonio vertido en corte. Además, cabe señalar que una declaración anterior de un testigo será admitida como prueba sustantiva siempre y cuando pueda haber una confrontación con el declarante. En otras palabras, el testigo debe encontrarse presente al momento de ofrecerse en evidencia la declaración anterior en el tribunal sujeto a ser **contrainterrogado en relación con la declaración anterior** y en cuanto a sus declaraciones presentes. Así, pasamos a interpretar los requisitos presentados en la Regla 802(a) de las Reglas de Evidencia, *supra*.

### D.

El requisito principal de origen constitucional en la referida Regla 802(a) de las Reglas de Evidencia, *supra*,[59] es que se pueda contrainterrogar sobre la declaración anterior,

---

[58] Íd.

[59] Si bien es cierto que en los casos que estaremos discutiendo se interpreta la anterior Regla 63 de las Reglas de Evidencia de 1979, *supra*, destacamos que los elementos esenciales y fundamentales de la misma no fueron eliminados en la nueva Regla 802(a) de las Reglas de Evidencia, *supra*. Específicamente, la Regla se modificó para incluir el requisito de inconsistente.

que a su vez, se relaciona directamente con el derecho a confrontar testigos y la naturaleza de nuestro sistema adversativo.[60] Por ello, para que una declaración jurada anterior pueda ser admitida, la defensa debió tener la **oportunidad de contrainterrogar** al testigo **respecto a esa declaración jurada anterior**.[61] Este Tribunal ha establecido que, para que los derechos constitucionales del acusado sean salvaguardados, la oportunidad de contrainterrogar a la testigo sobre su declaración anterior tiene que haberse dado de forma "plena y efectivamente".[62] Lo anterior, significa que el testigo esté sentado en la silla testifical, disponible para declarar y que efectivamente declare.[63] Sobre este particular, este foro especificó que "sólo aplica cuando el declarante está ocupando la silla testifical, durante, o luego de haberse cubierto su testimonio directo y estando sujeto al contrainterrogatorio".[64]

Ahora bien, el testigo debe estar sujeto a contrainterrogatorio no sólo sobre todo lo declarado en el directo en el juicio conforme a lo establecido en la Regla

---

[60] *Pueblo v. Adorno Cabrera*, *supra*, págs. 859-860.

[61] *Pueblo v. Torres Villafañe*, *supra*, pág. 498; *Pueblo v. Adorno Cabrera*, *supra*; *Pueblo v. Stevenson Colón*, *supra*.

[62] *Pueblo v. Torres Villafañe*, *supra*, pág. 498; *Pueblo v. Adorno Cabrera*, *supra*, págs. 860-861; *Pueblo v. Stevenson Colón*, *supra*, págs. 638-639.

[63] *Pueblo v. Torres Villafañe*, *supra*, pág. 497. Véase, también, *Pueblo v. Esteves Rosado*, *supra*.

[64] *Pueblo v. Esteves Rosado*, *supra*, pág. 338; *Pueblo v. Adorno Cabrera*, *supra*, pág. 849; *Pueblo v. De Jesús Ayuso*, *supra*, pág. 31; *Pueblo v. Torres Villafañe*, *supra*, págs. 498-499.

607 (B) de las Reglas de Evidencia,[65] sino también sobre la declaración anterior y las circunstancias en que se hizo.[66] Cabe resaltar que la oportunidad de contrainterrogar de la parte contra la que se ofrece la declaración anterior ha sido un derecho reconocido por este Tribunal independientemente de que la parte decida ejercer o no su derecho.[67]

Finalmente, la declaración jurada previa sobre la que una parte solicite su admisión como prueba sustantiva debe ser **inconsistente** con el testimonio prestado en corte. Ello, al resultar ser contrario o distinto a lo esbozado en la declaración jurada anterior.

Debemos mencionar que, en cuanto a la confiabilidad, este Tribunal ha reiterado que "de ordinario, […] las declaraciones de un testigo hechas en una fecha cercana a los hechos generalmente son más confiables, pues la memoria

---

[65] La Regla 607(B) de las Reglas de Evidencia, 32 LPRA Ap. VI, establece lo siguiente:
.    .    .    .    .    .    .    .
(b) Como regla general, el interrogatorio de las personas testigos será efectuado en el siguiente orden:
(1) Interrogatorio directo. -Primer examen de una persona testigo sobre un asunto no comprendido dentro del alcance de un interrogatorio previo de esa persona testigo.
(2) Contrainterrogatorio. -Primer examen de una persona testigo por una parte diferente a la que efectuó el interrogatorio directo. El contrainterrogatorio se limitará a la materia objeto del interrogatorio directo y a cuestiones que afecten la credibilidad de testigos. El tribunal puede, sin embargo, en el ejercicio de su discreción, permitir preguntas sobre otras materias como si fuera un interrogatorio directo.
.    .    .    .    .    .    .    .
[66] E.L. Chiesa, Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales, pág. 716.

[67] Pueblo v. Stevenson Colón, *supra*, págs. 638-639.

está fresca y ha habido menos oportunidad de intervención de influencias indebidas".[68]

Este Tribunal en Pueblo v. Esteves Rosado,[69] consideró la ventaja de la práctica de admisibilidad de una declaración jurada anterior al concluir lo siguiente:

> **Se estima también que las deposiciones anteriores de un testigo tienden a ser más confiables porque, por lo general, han sido hechas en fecha más cercana a los hechos, cuando la memoria es fresca y ha habido menos oportunidad de intervención de influencias indebidas en el testimonio del testigo.** Igualmente ha animado el cambio doctrinal cierta desconfianza de que el jurado, verdaderamente, por motivo de la instrucción que se les imparte, pueda realmente limitar su consideración de la declaración anterior como evidencia impugnatoria solamente, es decir, con fines de credibilidad, sin que tome como cierta la declaración anterior. **Entre los propósitos de admitir declaraciones anteriores de un testigo, se ha esbozado la ventaja que representa para enfrentarse con testigos "renegados" u hostiles que cambian su declaración, desfavoreciendo a la parte que lo llamó al estrado.** (Énfasis nuestro).[70]

De esta forma, este Tribunal entendió que se coloca en una posición satisfactoria al jurado para evaluar la veracidad y confiabilidad de ambas versiones del testigo, ya que pueden observar el "demeanor" del testigo al ser

---

[68] Pueblo v. Adorno Cabrera, *supra*, pág. 864. Asimismo, el Profesor Chiesa puntualiza que:
[L]a declaración anterior es más confiable que el testimonio en corte, pues es más próxima a los hechos y se reduce el elemento del olvido; por otro lado, el testigo puede haber tenido motivos para cambiar su declaración al momento de testificar, como intimidación por la parte perjudicada con la declaración anterior. E.L. Chiesa, Compendio de evidencia (en el sistema adversarial), México, Tirant lo Blanch, 2021, pág. 341.

[69] 110 DPR 334, 338-339 (1980).

[70] Pueblo v. Esteves Rosado, *supra*, págs. 338-339.

confrontado con la declaración anterior y escuchar cualesquiera explicaciones que este tenga que ofrecer en cuanto a la inconsistencia.[71]

**E.**

En cuanto al efecto de la aplicación del inciso (a) de la Regla 801 de las Reglas de Evidencia, *supra*, sobre las declaraciones inconsistentes con el testimonio en corte, el Profesor Chiesa expresa que: "[e]stas son las declaraciones más importantes, pues más allá de su uso para impugnar al testigo bajo la regla 608 (B)(4), se permite usar tales declaraciones como prueba sustantiva sin que sea aplicable la regla de exclusión de prueba de referencia (regla 804)[…]".[72]   De esta forma, la "declaración jurada se admite por ser incongruente con el testimonio y puede utilizarse para aceptar la veracidad de lo declarado en el documento y sustituir el testimonio prestado en corte por el testigo".[73]

**F.**

En cuanto a <u>Pueblo v. Adorno Cabrera</u>, *supra*, caso que desde el inicio de la controversia que nos ocupa ha sido citado insistentemente, es necesario aclarar lo siguiente. En dicho caso este Tribunal dirimió y pautó los requisitos

---

[71] Íd., págs. 337-338.

[72] E. Chiesa Aponte, <u>Reglas de Evidencia Comentadas</u>, 1ra ed., San Juan, Situm, 2016, pág. 261.

[73] R. Emmanuelli Jiménez, <u>Compendio de derecho probatorio puertorriqueño</u>, 1ra ed., San Juan, Situm, 2012, pág. 175.

bajo los cuales una declaración anterior de un testigo de cargo que era inconsistente con su testimonio en corte era **suficiente para sostener una convicción**. De manera que, distinto al caso que nos ocupa, en <u>Pueblo v. Adorno Cabrera</u>, *supra*, la controversia no se trataba de la admisión de la declaración anterior, sino algo **posterior a su admisibilidad**. Esto es, el Tribunal debía determinar si tal declaración era suficiente para sostener la convicción de Adorno Cabrera. Tal circunstancia no está, ni puede estar presente en este caso, pues la controversia que se trae ante nuestra consideración es si tal declaración es admisible como prueba sustantiva, y si como tal, debe ser leída ante el jurado.

### III

Como mencionáramos, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones denegaron la solicitud del Ministerio Público para que se admitiera la totalidad de la declaración jurada anterior como prueba de evidencia sustantiva. En particular, el foro primario denegó la totalidad de la declaración jurada de la testigo como prueba sustantiva al determinar que el Ministerio Público no lo puso en posición suficiente para evaluar cómo la alegada inconsistencia resulta esencial al establecimiento de los elementos constitutivos del delito para requerir su admisión como prueba sustantiva. Por su parte, el Tribunal de Apelaciones razonó que algunas partes de la declaración jurada son admisibles al cumplir con los elementos requeridos en la Regla 802(a) de las Reglas de Evidencia, *supra*. A pesar de ello, denegó la expedición del recurso.

Por su parte, el PG recurre ante este Tribunal y peticiona la admisión total o limitada de la declaración jurada anterior de la testigo como prueba sustantiva.[74] En síntesis, puntualiza que la admisibilidad es indispensable para probar la verdad de lo aseverado por la testigo. Ello, porque la testigo durante su testimonio incurrió en inconsistencias serias que van a la médula del proceso de la identificación y conexión del acusado con el asesinato.[75]

Tras escuchar y evaluar la totalidad de la grabación de las vistas celebradas durante los días 25, 26 y 27 de octubre de 2021, concluimos que es evidente la contradicción de lo establecido en la declaración jurada que la testigo otorgó el día después en que ocurrieron los hechos y lo declarado por esta en sala. **En cuanto a lo pertinente y esencial de tales contradicciones, basta con decir que mientras en la declaración jurada la testigo identifica claramente y sin asomo de duda al acusado como quien disparó contra Abismael, en el juicio dijo que tal persona no se encontraba en sala, y que ella siempre ha dicho que el acusado "se parecía" al que disparó, esto porque estaba oscuro la noche de los hechos.**

Por otro lado, en cuanto a la razón por la cual en la declaración jurada la testigo admite que, durante el line-up de fotos, a sabiendas identificó primeramente a una persona que no era el acusado, pero inmediatamente después

---

[74] Petición de *certiorari*, pág. 22.

[75] Petición de *certiorari*, págs. 19 y 21.

identifica al acusado, esta dijo que era porque sentía miedo **por ella** y sus hijos. Ahora bien, fuera de señalar que sintió miedo **por ella** y por sus hijos, **en la declaración jurada la testigo no identifica a qué específicamente obedecía su miedo. Sin embargo, durante el juicio dijo que su miedo obedecía a que el Departamento de la Familia le removiera sus hijos. Esto es otra contradicción esencial.** Notemos que en circunstancias como las del caso de autos el Ministerio Público se ve forzado a impugnar a su propio testigo. **Sin embargo, lógicamente el Ministerio Público nada gana con tener éxito impugnando su propio testigo, sino rehabilitándolo luego de impugnarlo. Y la mejor manera de rehabilitarlo es que el juzgador pueda recibir prueba que lo lleve a considerar por qué el testigo cambió su testimonio.** Es precisamente esto lo esencial de esta contradicción de la testigo en el caso ante nos. ¿Debe tener la oportunidad el juzgador, ante la declaración anterior de la testigo de que sentía miedo **por ella** y por sus hijos en contradicción con lo que dijo durante su testimonio en juicio, esto es, que temía porque sus hijos le fueran removidos, escuchar ambas versiones para intentar discernir a qué pudo deberse tal cambio?

Claramente, la Regla 802(a) de las Reglas de Evidencia, *supra*, busca la inconsistencia entre la declaración extrajudicial y lo declarado en el juicio. Así, en este caso, la primera contradicción surge en la identificación que realiza la testigo en la declaración jurada y lo expresado

en el juicio en el momento en que el Fiscal le solicita la identificación del acusado. Por tanto, contrario a lo expresado por el Tribunal de Primera Instancia, la inconsistencia sobre la identificación es de carácter esencial. Ello, unido a que, además, la segunda inconsistencia esencial sobre el temor de la testigo fue presentada por el Ministerio Público como el motivo para el cambio del testimonio. De manera que, la credibilidad que debe dirimir el jurado debe ser sobre el contenido de la declaración jurada anterior -específicamente, la identificación del acusado y el motivo de no haberlo identificado- y el testimonio prestado por la testigo en el juicio. De esta forma, el Jurado recibirá como evidencia el contenido de la declaración jurada prestada al día siguiente por la testigo ocular de los hechos.

Ahora bien, **la pretensión original del Estado de que la declaración jurada sea admitida en su totalidad, de ninguna manera puede ser concedida.** Esto, pues no pasa el crisol ni cumple con las exigencias de la Regla 802(a) de las Reglas de Evidencia, *supra*. Y es que, como ya hemos dicho, la declaración jurada anterior como prueba sustantiva es admisible, si y solo si, se trata de la porción en la que se cumplió con los siguientes aspectos a considerar: (1) la testigo de cargo testificó en el juicio; (2) estuvo sujeta a contrainterrogatorio con relación a algunas partes de la declaración jurada brindada anteriormente; (3) esas partes de la declaración jurada anterior  son inconsistentes con el

testimonio brindado en corte; y (4) la declaración jurada fue prestada bajo juramento y por tanto está sujeta a perjurio.

Como hemos visto, solo ciertas porciones de la declaración jurada en cuestión cumplen con estos cuatro requisitos. Así, aunque en un momento dado el Fiscal se acercó al estrado y solicitó que se admitiera como evidencia sustantiva la totalidad de la declaración jurada, en ese momento el Tribunal de Primera Instancia pudo, como lo permite la Regla 109 de las Reglas de Evidencia,[76] determinar preliminarmente la admisibilidad como evidencia sustantiva, no de la totalidad de la declaración jurada, sino aquella parte que, conforme lo hemos expuesto, cumplía claramente con los requisitos de la Regla 802(a).

## IV

En vista de todo lo anterior, revocamos las resoluciones *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que este admita como prueba sustantiva las siguientes partes transcritas de la declaración jurada anterior de la testigo de cargo, y que estas le sean leídas al jurado:

**Transcripción de la Declaración Jurada de Hylarie Jiménez Chico**

**Página 4**

. . . . . . . .

F: ¿Qué ocurrió luego?

T: Ahí escucho un carro que está llegando y cuando miré se paró en medio de la carretera.

---

[76] 32 LPRA Ap. VI, R. 109.

F: ¿Cómo era el carro?

T: Era de color oscuro y grande, se notaba que era un carro viejo, bastante atrasado. Cuando volteo a mirar el carro, se bajan dos hombres del lado derecho, ambos pasajeros, había un tercero guiando.

F: ¿Hacia dónde se dirigieron los dos que se bajaron?

T: Uno se bajó con un arma grande, negra, en sus manos. El otro no tenía nada en sus manos, pero tenía un abrigo por encima de la cabeza, era alto y flaco. El primero que se bajó lo reconocí porque anteriormente lo había visto en muchas ocasiones en el residencial y le dicen Pupi.

F: ¿Con relación a Pupi, cómo cuántas veces lo había visto antes?

**Página 5**

T: Como más de 10 veces, en el residencial, él se pasaba caminando, a veces solo, a veces con los muchachos. Recuerdo que una vez, estando en el apartamento en el balcón de atrás, mi papá me dijo "mira ese es Pupi" y cuando yo me asomé lo vi.

. .    .    .    .    .    .

F: ¿Cómo describe físicamente a Pupi, según lo viste el 7 de diciembre de 2018, en horas de la noche?

T: Es una persona llenita, no muy alta, con pelo bajito, trigueño claro, tenía un poco de barba, se le veía una barba como una chiva.

F: ¿Qué ocurrió una vez se baja Pupi con el arma grande y la otra persona?

T: Ellos se acercaron hasta la caja de luz verde que hay en el patio frente al edificio, al lado de las escaleras que da a la acera de los estacionamientos. Ahí uno le grito a Abismael, 'Negro', y el otro le gritó, 'no te muevas, no salgas corriendo'. Yo me moví hacia debajo de las escaleras donde está el gallo. Obelito se quedó en el mismo lugar. Abismael se quedó parado allí.

F: ¿Qué ocurrió luego?

T: Vi a Pupi que hizo un disparó desde la parte del frente de la caja de luz, en dirección hacia las escaleras donde estaba Abismael. Rápido que disparó, Pupi se alzó para mirar hacia donde Abismael estaba tirado en el piso. Pupi dijo 'vámonos que le di, está en el piso'.

. .    .    .    .    .    .

**Página 6**

. .    .    .    .    .    .

F: ¿A qué agente inicialmente usted le manifestó lo ocurrido?

T:  Al agente De Jesús de Homicidios.

F: ¿Cómo compara lo que usted acaba de declararme en este momento con lo que le dijo inicialmente al agente De Jesús?

T:  Yo al agente no le dije inicialmente todo lo que había ocurrido, le dije parte, específicamente no le conté la parte de que había visto a Pupi disparando con el arma; desde el lugar dónde lo vi y le dije que yo estaba arriba cuando en realidad estaba abajo.

F: ¿Por qué razón usted dijo eso?

T:  Porque acababan de ocurrir los hechos, yo tenía mucho miedo, tenía miedo de decir lo que yo había visto.

. .    .    .    .    .    .

**Página 7**

F: ¿Le pregunto si al momento de presentarle ese cartón inmediatamente que usted lo vio pudo reconocer a Pupi?

T: Sí

F: ¿Le pregunto si la persona que usted identificó con el número 6 corresponde a Pupi?

T: No

F: ¿Por qué si usted inmediatamente sabía quién era Pupi, esperó varios minutos y señaló una persona que no era Pupi?

T: Porque tengo miedo por mí, por mis hijos. No me atrevía.

F: ¿Qué ocurrió luego que usted señaló el número 6?

T: El agente De Jesús me preguntó por qué yo lloraba y yo le dije al agente que tenía miedo, y que yo sabía que la persona que yo había visto estaba en otro número, pero por miedo señalé el número 6.

F: ¿Qué hizo el agente De Jesús?

T: Me preguntó si yo sabía el número correcto y yo le dije que sí y le señalé el 9 inmediatamente.

. .   .   .   .   .   .   .

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Peticionario         CC-2022-0039    Certiorari

       v.

Javier Zeno Torres

    Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 16 de diciembre de 2022.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos las resoluciones de los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que este admita como prueba sustantiva las partes de la declaración jurada anterior de la testigo de cargo transcritas en la Opinión, y que estas le sean leídas al jurado.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez no intervinieron.


                Javier O. Sepúlveda Rodríguez
                Secretario del Tribunal Supremo